WILLIAMS, J.
liThe defendant, Craig Oliphant, was charged by bill of information with vehicular homicide, a violation of LSA-R.S. 14:32.1, and hit-and-run driving, a violation of LSA-R.S. 14:100. Pursuant to a plea agreement with the state, the defendant pled guilty to the vehicular homicide charge, and the state agreed to dismiss the hit-and-run driving charge. Following a sentencing hearing and a motion to reconsider sentence, the district court sentenced the defendant to serve 25 years at hard labor, with credit for time served. The first 15 years of the defendant’s sentence was ordered to be served without benefit of probation, parole or suspension of sentence. The district court also imposed a fine of $10,000, or, in default of payment thereof, imposed a sentence of one year in prison. The court ordered the default time to run consecutively to the hard labor sentence. The defendant was ordered to participate in court-approved substance abuse and driver improvement programs. The district court designated the offense of conviction, vehicular homicide, as a crime of violence, as defined by LSA-R.S. 14:2. The defendant now appeals.
After reviewing the record and the applicable laws, we reverse that portion of the sentence which designated vehicular homicide as a crime of violence. We also vacate the defendant’s 25-year sentence and $10,000 fine, and we remand this matter to the trial court for resentencing, with instructions to impose a sentence of not more than 15 years at hard labor.
FACTS
On February 8, 2009, at approximately 10:30 p.m., the defendant was traveling along U.S. Highway 165, from Bastrop, Louisiana towards Bonita, | ¡Louisiana. Cravis M. Scott and Frederick Matthews were standing on the shoulder of the highway in front of the home of Scott’s mother. The defendant veered onto the shoulder of the road and hit Scott with his vehicle, knocking him into Matthews; both men landed in a nearby ditch. Matthews was injured as a result of the accident; however, Scott was pronounced dead at the scene.
After the impact, the defendant continued driving. He later stated that he believed he had struck a garbage can or a mailbox. Subsequently, he was stopped by a Morehouse Parish Sheriffs deputy, who ordered him to return to the scene. When the defendant returned to the scene, he was advised of his Miranda rights and questioned about the incident. The defen *606 dant denied consuming any alcoholic beverages; however, he performed poorly on a field sobriety test. The defendant was later transported to the Morehouse Parish jail, where his blood alcohol content was measured at .247g%. The defendant was charged with vehicular homicide, a violation of LSA-R.S. 14:32.1, and hit-and-run driving, a violation of LSA-R.S. 14:100. While incarcerated, the defendant was released from jail, on his own recognizance, to attend a substance abuse program at the Rayville Recovery Center. He completed the program and was returned to the Morehouse Parish jail.
As stated above, on July 19, 2010, the defendant pled guilty to vehicular homicide. As a part of the plea bargain, the state agreed to dismiss the charge of hit- and-run driving. Following a very lengthy sentencing hearing, the defendant was sentenced to serve 25 years in prison at hard labor, with credit for time served. The court also imposed a fine in lathe amount of $10,000, or, in default of payment thereof, the defendant would serve one year in jail. The default time was ordered to run consecutively to the hard labor sentence. The defendant was ordered to participate in court-approved substance abuse and driver improvement programs. Pursuant to LSA-C.Cr.P. art. 890.1, the district court designated the offense of conviction as a crime of violence as defined by LSA-R.S. 14:2.
The defendant filed a motion to reconsider sentence, which was granted. The court amended the defendant’s sentence to provide that the first 15 years of the 25-year sentence would be served without benefit of parole, probation, or suspension of sentence. No other previously imposed conditions were amended.
The defendant now appeals.
DISCUSSION
The defendant contends the district court erred in designating the offense of vehicular homicide as a “crime of violence.” He argues that the offense is not enumerated in LSA-R.S. 14:2, and the designation of the offense as a crime of violence will affect his accrual of good-time credit for time served.
On the other hand, the state contends the court correctly designated the offense as a crime of -violence. The state argues that the very definition of vehicular homicide includes the use of physical force against the person of another.[1]
|4LSA-C.Cr.P. art. 890.1 provides:
A. When the court imposes a sentence, the court shall designate whether the crime involved is a crime of violence or an attempted crime of violence as defined or enumerated in R.S. 14:2(B).
B. Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined or enumerated in R.S. 14:2(B) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D).[2]
*607 1BLSA-R.S. 14:2(B) provides, in pertinent part:
In this Code, “crime of violence” means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon[.]
A number of offenses, and attempted offenses, are included in the statute as crimes of violence. However, the list of offenses enumerated in the statute is illustrative, not exclusive. State v. Smith, 45, 430 (La.App.2d Cir.8/11/10), 47 So.3d 553, writ denied, 2010-2384 (La.3/4/11), 58 So.3d 474; State v. Hinton, 2008-1849 (La.App. 1st Cir.2/13/09), 6 So.3d 242.
LSA-R.S. 14:29 provides:
Homicide is the killing of a human being by the act, procurement, or culpable omission of another. Criminal homicide is of five grades:
(1) First degree murder.
(2) Second degree murder.
(3) Manslaughter.
(4) Negligent homicide.
(5) Vehicular homicide.
The definition of vehicular homicide is set forth in LSA-R.S. 14:32.1. This statute provides, in pertinent part:
IrA- Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight *608 based upon grams of alcohol per one hundred cubic centimeters of blood.
[[Image here]]
First, we note that any homicide can be construed as a violent offense. However, at issue is not whether the offense was executed in a violent manner, but whether vehicular homicide generally, as defined in LSA-R.S. 14:32.1, is a “crime of violence,” as defined by 14:2. See, State v. Hinton, supra; State v. Fontenot, 2006-226 (La.App. 3d Cir.7/12/06), 934 So.2d 935.
The issue raised herein presents a question of law and is, therefore, subject to de novo review. State v. Smith, 99-2094, 99-2015, 99-2019, 99-0606 (La.7/6/00), 766 So.2d 501; State v. Hinton, supra. In construing the applicable criminal statutes, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly; and (2) the words of a statute must be given their everyday meaning. State v. Hinton, supra, citing State ex rel. Robinson v. Blackburn, 367 So.2d 360 (La.1979); see also LSA-R.S. 14:3.
We also note that LSA-R.S. 14:2 specifically designates first degree | -murder, second degree murder and manslaughter as crimes of violence. Noticeably absent from this list are the offenses of negligent homicide and vehicular homicide. As noted above, vehicular homicide is defined as the killing of a human being caused by an offender’s operation of a motor vehicle when the offender’s blood alcohol concentration is 0.08 percent or more, whether or not the offender intended to cause death or great bodily harm. See, LSA-R.S. 14:32.1. An offense is a “crime of violence” if an element of the offense involves the use of physical force against the person of another in the course of committing the offense. LSA-R.S. 14:2.
After reviewing this record in its entirety, we find that the district court erred in designating vehicular homicide as a crime of violence. Vehicular homicide combines the following elements: (1) the killing of a human being (2) caused by an offender’s operation of a motor vehicle (3) when the offender’s blood alcohol concentration is 0.08 percent or more. However, the commission of the offense does not necessarily require, as an essential element, the use, attempted use, or threatened use of physical force against the person of another.
Clearly, the undisputed evidence in this case proves that the defendant drove his vehicle, while markedly intoxicated, and caused the death of Cravis Scott and injuries to Frederick Matthews. Although the defendant struck Mr. Scott with his vehicle and drove away from the scene, there is nothing in the record to support a finding that the defendant intentionally used physical force against Mr. Scott or Mr. Matthews. For these reasons, we reverse the district court’s finding that vehicular | shomicide, particularly under the facts of this case, is a crime of violence.

Sentence—LSA-C.Cr.P. art. 89LI Factors

The defendant also contends the district court erred in failing to consider certain factors and/or improperly weighing certain factors set forth in LSA-C.Cr.P. art. 894.1. The defendant urges that the district court failed to comply with numerous factors which will be discussed below.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance, so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith,
*609 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297.
The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
In the instant case, on January 4, 2011, the district court conducted an extensive sentencing hearing, wherein the defendant and several witnesses had an opportunity to make statements and present testimony. Following the defendant’s presentation, the state presented testimony from many witnesses, including the deceased victim’s wife, mother, sisters, brother-in-law and a longtime neighbor/family friend. Thereafter, the district court conducted a very thorough review of the presentence investigation report, which included the defendant’s social history, rehabilitation efforts, prior criminal history and the seriousness of the offense.
The defendant argues at length in his brief, challenging what he refers to as the court’s “improper” or “incorrect” consideration of the sentencing criteria set forth in Art. 894.1. For the purpose of clarity, we will address each of his arguments.
First, the defendant contends the district court improperly gave undue weight to the injuries sustained by Matthews, the other victim of the accident. The defendant argues that the judge improperly stated that both |inScott and Matthews “could have been killed” as a result of the defendant’s actions.
It is undisputed that both Matthews and Scott were standing on the shoulder of the highway. It is also undisputed that the defendant’s vehicle struck Scott, causing Scott to fall into Matthews. The district judge merely noted that the defendant’s criminal conduct caused injury to both victims, and both victims could have been killed as a result of the defendant’s conduct. The district judge correctly noted that Scott was killed almost instantly and “his friend somehow survived.” Contrary to the defendant’s assertions, we find that it is appropriate during the sentencing phase for the district court to consider all of the facts and circumstances surrounding the commission of the offense and all of the injuries sustained by the victims as a result of the defendant’s criminal conduct. Thus, defendant’s argument lacks merit.
Next, the defendant contends the district court incorrectly compared the offense of vehicular homicide to an offense *610 which required proof of specific intent to kill or harm. He argues that the court did not adequately consider his lack of intent to cause bodily harm.
During its comments, the district court opined that the defendant’s actions, in driving a vehicle with a blood alcohol level which was nearly three times the legal limit, was “no different from a person putting a bullet [in a gun], pointing that gun at another human being, pulling the trigger, and killing that person.” The court also stated, “A gun is a dangerous weapon and so is a motor vehicle in the hands of an intoxicated person, especially In one who was as intoxicated as you were on the night of this tragedy.” The court did not conclude that the defendant specifically intended to kill Scott. Rather, the court merely made an analogy of two instances to explain its belief that someone who was as voluntarily mentally impaired as this defendant, who made a decision to drive a vehicle, should have anticipated adverse consequences as a result of his actions.
Next, the defendant raises two arguments with regard to comments made by the district court concerning the conduct of the law enforcement officers on the night of the accident and the conduct of jail officials after the defendant was booked into the Morehouse Parish jail. The defendant contends the district court “spent some time and some emotion” commenting on the investigating officers’ actions in allowing the defendant to drive back to the accident scene and releasing the defendant’s vehicle to him shortly after the accident. He asserts that he was under arrest at that time, and he was only following the instructions that were given to him by the law enforcement officers. The defendant also contends the district court improperly voiced its disagreement with the jail officials’ decision to release the defendant from jail and allow him to attend a substance abuse center after his arrest, without having to post a bond.
With regard to the comments concerning the defendant being allowed to drive back to the scene of the accident, the court’s statements, in proper context, are as follows:
Now, the court sat during the bond reduction hearing and also read various — I believe the 48 hour affidavit in this case, as well as several other, I believe, the initial police reports in this case. There was some mention in the | ^reports that initially after Mr. Oliphant was stopped, that he was told to get back into his vehicle and drive, which I find to be outrageous. Here’s a man who had just been involved in a serious accident involving the death of one man and he was told to get back in his vehicle and drive back to the scene? The Court was also disappointed in many ways with the way the entire investigation was conducted.
Additionally, the sentencing transcript reflects that the district judge compared the defendant’s post-arrest participation in a substance abuse rehabilitation program, without posting a bond, to “a first or second degree murderer being allowed the same opportunity.” The court noted that it had not issued an order for the defendant to be released on his own recognizance to attend the substance abuse program.
We find that the district court’s comments indicate that the court was concerned with the procedure utilized by the law enforcement officers in the investigation of the incident, and the subsequent arrest of the defendant. There is nothing in the transcript to indicate that these comments were used by the court as aggravating or mitigating factors, affecting the defendant’s sentence. The district court can comment on the evidence of record and consider all of the facts and cir *611 cumstances surrounding the commission of the offense. Clearly, the defendant’s post-arrest release on his own recognizance to a substance abuse treatment center was relevant to the court in fashioning the sentence for this particular defendant.
By his next argument, the defendant contends the district court erroneously stated the instant offense was not the defendant’s first offense, but the defendant was “just never caught” before the instant offense. He argues that the court did not consider the fact that the defendant had no prior | ^offenses.
The defendant’s argument that the district court did not consider the fact that the instant offense was his first offense is belied by the record. The court stated, “Mr. Oliphant, this factor helps you to some extent in that the presentence report reflects that you have no juvenile or adult criminal history[.]” The court also remarked that there “may have been no documented reports of the defendant drinking and driving; however, the level of the defendant’s drinking led the court to believe it was actually the first time the defendant had been caught for his actions.” A witness at the sentencing hearing testified that the defendant was known in the area to be a person who drank constantly and then drove around the area. Thus, the court’s comments and considerations were not inappropriate, as the trial court may consider both prior criminal activity and hearsay evidence during the sentencing hearing. See, State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.2/13/09), 999 So.2d 1145; State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272; State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218.
Next, the defendant contends during the sentencing colloquy, the district court criticized him for seeking rehabilitation, and later indicated that he would likely “re-offend” if he did not seek professional help. He also contends the district court considered the defendant’s “character and attitude” and whether he would commit another offense while he was intoxicated. The defendant argues that in doing so, the court failed to 114properly consider the fact that he had, in fact, completed an alcohol treatment program, regularly attended AA meetings, and regularly spoken publicly on the subject of drinking and driving.
There is nothing in the record that indicates that the district court was critical of the defendant’s decision to enter into a substance abuse rehabilitation center. The court merely commented on the particular procedure under which the defendant was allowed to do so. Additionally, the court stated that it was aware, from the defendant’s testimony at the sentencing hearing and certain documents filed in the record, that the defendant had sought “appropriate attention for [his] drinking problem.”
The defendant further contends the district court failed to consider the excessive hardship his incarceration would create for him and his dependents, as the court inaccurately asserted that the defendant’s daughters would recover (from his absence) over time. He argues that the court also failed to consider the sentencing hearing testimony that indicated the defendant was a great father and was very involved in his daughters’ lives.
Our review of the record reveals that the district court noted that the defendant was a divorced businessman and the father of two daughters, with whom he shared a very close relationship. The district court clearly stated that it was aware of the defendant’s relationship with his daughters; however, the court concluded the *612 relationship could not totally mitigate the defendant’s sentence. The court also specifically noted that the defendant’s incarceration would entail some hardship for him and his family; however, the court did find that the hardship could be overcome in time. Certainly, | ^incarceration automatically entails some degree of hardship on all criminal defendants and their families. However, there is nothing in the record to support the defendant’s argument that he and his dependents would experience “excessive” hardship by his incarceration.
Next, the defendant contends the district court improperly considered his failure to apologize to the victim’s family prior to his sentencing. He argues that the court incorrectly evaluated his sense of remorse, despite the clear testimony of defense witnesses at the sentencing hearing.[3]
During the hearing, the defendant took “full responsibility for [his] actions,” apologized to the family at length and expressed his deep remorse for causing the victim’s death. However, the victim’s family members testified that the defendant did not apologize or express remorse on the night of the incident or at any time thereafter. During its comments, the district court stated that it understood that the defendant’s prior failure to address the family or to show remorse may have been at the direction of his counsel. However, the court also stated that the defendant had previously made statements against his interest, and, since he had done so, he could have made an apology or statement to the family. The court stated, “But in the Court’s view when you start making statements, if you are going to tell some, tell it all. Tell people that you are sorry.” The court was adamant in its belief that the defendant’s apology made on the day of sentencing could have been made sooner.
1 ifiThe district court considered the defendant’s initial lack of remorse as one of many factors, and there is no indication that the court placed any greater weight on it than any of the other factors. The court reviewed the aggravating and mitigating factors at length, including whether the defendant’s conduct caused or threatened serious harm; the grounds tending to excuse or justify the defendant’s conduct; whether the defendant contemplated his criminal conduct would cause or threaten serious harm; and whether the defendant acted under strong provocation. There is no requirement that specific matters be given any particular weight at sentencing. State v. Swayzer, supra; State v. Shumaker, supra.
We have reviewed this record in its entirety, and we find that the factors the defendant argues were not considered by the sentencing court were, in fact, considered. The trial court determines the weight that each individual factor will have in fashioning the sentence to be imposed. There is no showing that the district court improperly weighed the factors in imposing the sentence. The court noted that it considered the presentence investigation, the facts and circumstances of the case, as well as the codal sentencing provisions.

Excessive Sentence

The defendant also contends the sentence imposed was constitutionally excessive. He argues that the 25-year sentence is near the maximum sentence and, therefore, should be reserved for the worst type *613 of offenses and the worst offenders. The defendant also argues that his lack of prior criminal history, his relationship with his children, his completion of a |]7substance abuse rehabilitation program, and his expressions of remorse to the court and the family proves that a lesser sentence should have been imposed.
The defendant also contends the district court erred in imposing a $10,000 fíne. He argues that he will be required to serve an additional year in prison, consecutive to his hard labor sentence, because the court made it impossible for him to pay the fíne by imposing a lengthy sentence.
The second portion of appellate review of a sentence requires that a determination be made regarding the constitutional excessiveness of that sentence. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/08), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him or her should not be set aside as excessive in the absence of a manifest abuse of his or her discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 ||SSo.2d 7; State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, supra.
LSA-R.S. 14:32.1(B) provides, in pertinent part:
Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years.
[[Image here]]
If the operator’s blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.
[[Image here]]
The court shall require the offender to participate in a court-approved substance abuse program and may require the offender to participate in a court-approved driver improvement program. All driver improvement courses required under this Section shall include instruction on railroad grade crossing safety.
If a sentence imposed includes a fine or costs, the sentence shall provide that, in default of payment thereof, the defendant shall be imprisoned for a specified period not to exceed one year. See, LSA-C.Cr.P. art. 884.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), *614 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.
After reviewing the record in its entirety, we find that the sentence | ^imposed, 25 years at hard labor, with 15 years to be served without benefit of probation, parole or suspension of sentence, is constitutionally excessive. We do not make light of the death of Cravis Scott or the loss suffered by his family. However, based on this record, we find that the defendant is not the worst of offenders for whom maximum, or near maximum, sentences are reserved. The defendant made the decision to attempt to drive himself home after becoming highly intoxicated, and unfortunately, his actions resulted in the death of one man and injuries to another. Nonetheless, the defendant is a first-time felony offender with no record of any prior DWI violations or any other criminal offense. During the sentencing hearing, the defendant expressed deep remorse for his crime. Prior to the hearing, the defendant demonstrated his remorse by assisting the victim’s family in obtaining financial benefits. The defendant also recognized his need for treatment for his alcoholism, and voluntarily completed an in-house substance abuse program and regularly attended AA meetings. The district court correctly pointed out the seriousness of the offense of vehicular homicide and the requirement of incarceration. However, we find that the circumstances of this case indicate that a lesser sentence would have served the same purpose. Thus, we find that the sentence, 25 years at hard labor and $10,000 fine, is grossly disproportionate to the severity of the crime and is nothing more than a needless imposition of pain and suffering.
CONCLUSION
For the reasons set forth herein, we reverse that portion of the sentence which designated vehicular homicide as a crime of violence. WeJ^also vacate the defendant’s 25-year sentence and $10,000 fine and remand this matter to the trial court for resentencing, with instructions to impose a sentence of not more than 15 years at hard labor.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, DREW, LOLLEY and SEXTON (Pro Tempore), JJ.
11 Rehearing denied.
DREW, J., dissents from the denial of application for rehearing and assigns reasons.

. We note that, during his oral argument, the assistant district attorney informed this Court that he did not believe vehicular homicide was a crime of violence. However, the assistant district attorney also stated that such a determination is within the discretion of the district court.

. LSA-R.S. 15:571.3, in pertinent part:
* * *
B. (l)(a) Unless otherwise prohibited, every inmate in the custody of the department who has been convicted of a felony, except an inmate convicted a second time of a crime of violence as defined by R.S. *607 14:2(B), and sentenced to imprisonment for a stated number of years or months, may earn, in lieu of incentive wages, a diminution of sentence by good behavior and performance of work or self-improvement activities, or both, to be known as "good time”. Those inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might be commuted to a specific number of years. The secretary shall establish regulations for awarding and recording of good time and shall determine when good time has been earned toward diminution of sentence. The amount of diminution of sentence allowed under the provisions of this Section shall be at the rate of thirty-five days for every thirty days in actual custody served on the imposed sentence, including time spent in custody with good behavior prior to sentencing for the particular sentence imposed as authorized by the provisions of Code of Criminal Procedure Article 880.
(b) The provisions of Subparagraph (a) of this Paragraph shall be applicable to persons convicted of offenses on or after January 1, 1992 and who are not serving a sentence for the following offenses: (i) A sex offense as defined in R.S. 15:541. (ii) A crime of violence as defined in R.S. 14:2(B). (iii) Any offense which would constitute a crime of violence as defined in R.S. 14:2(B) or a sex offense as defined in R.S. 15:541, regardless of the date of conviction.
(2) An inmate convicted a first time of a crime of violence as defined in R.S. 14:2(B), shall earn diminution of sentence at a rate of three days for every seventeen days in actual custody held on the imposed sentence, including time spent in custody with good behavior prior to sentencing for the particular sentence imposed as authorized by Code of Criminal Procedure Article 880.

. A defendant’s lack of remorse is an appropriate sentencing consideration. State v. Birch, 43,119 (La.App.2d Cir.3/19/08), 979 So.2d 643; State v. Robinson, 33,921 (La.App. 2d Cir. 11/01/00), 770 So.2d 868; State v. Shipp, 30,562 (La.App.2d Cir.4/8/98), 712 So.2d 230, 237, writ denied, 98-1199 (La.9/25/99), 724 So.2d 775.