416 So.2d 65 (1982)
STATE of Louisiana
v.
Hilary L. TRAHAN.
No. 81-KA-1283.
Supreme Court of Louisiana.
June 21, 1982.
*66 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jerry G. Jones, Dist. Atty., for plaintiff-appellee.
Kenneth E. Badon, Lake Charles, for defendant-appellant.
WATSON, Justice.[*]
Following trial on one count of attempted first degree murder, Hilary L. "Poochie" Trahan was convicted by a jury of aggravated battery and sentenced to four years in the custody of the Department of Corrections. LSA-R.S. 14:34. He has appealed his conviction and sentence, assigning five specifications of error.

FACTS
On August 8, 1980, lower Cameron Parish had been evacuated because of a hurricane warning. Deputy Charles Joseph Smith, Sr. of the Cameron Parish Sheriff's Department was patroling in the Creole-Chenier Perdue area to protect the property of the absent residents from burglary and vandalism. Smith had ascertained that Willard and Bryan Theriot were checking on their cattle. When Smith encountered a Blazer vehicle, he tried to determine the occupant's business in the evacuated area. He had trouble catching the vehicle and drove in excess of eighty-five miles per hour in pursuit. The Blazer's driver finally stopped in a driveway.[1] Smith also stopped. The Theriots had been following in their pickup truck and arrived at the scene just as the Blazer started backing up. Smith activated the red lights on the top of his patrol car and backed away to avoid a collision. His headlights revealed that the driver of the Blazer was "Poochie" Trahan. Trahan eluded the patrol car by climbing an embankment and another high speed chase ensued with Smith using his red lights and siren. Trahan said he was trying to get away because he was afraid of Smith. Because of Trahan's reckless driving, Smith notified the sheriff's office by radio that he was chasing a DWI suspect.
Trahan ran his vehicle across a cattle guard and through a metal gate into the marsh where he drove in circles. At the time, Smith did not know the pasture belonged to Trahan's father. Smith stopped his vehicle short of the marsh. Trahan started driving "head-on" toward him but veered off. (Tr. 137) Smith fired a warning shot with his shotgun. His gun jammed. Smith drove the patrol car back to the cattle guard and stopped there to intercept the Blazer. Smith got out and stood on the left side between the open door and his car.
Trahan rammed his Blazer into the back of the patrol car at a speed of about thirty miles per hour. According to Smith, he "veered toward the driver's side of the car where I was standing". (Tr. 142) Trahan's testimony was that he had intended to pass the patrol car on the left and veered to the right to avoid hitting Smith after Smith got out of his car. Trahan admitted he did not use his brakes. The deputy was struck with *67 considerable force by the patrol car or the Blazer. Smith fell "belly down". (Tr. 153) His jaw was numb; there was blood in his mouth; he couldn't move his left arm. Trahan turned him over and said:
"... Charles, you have picked me up for DWI three times. You ain't going to bring me in this time. I'm going to do the shooting; I'm going to kill you." (Tr. 168)
The two struggled over Smith's pistol. Winston Theriot arrived, grabbed Trahan's foot, and pulled him off of the deputy. Wildlife agent James Nunez arrived on the scene. He said Smith was bleeding badly and staggering. After Trahan was arrested by a state trooper, he said: "James Nunez, you're going to be the next one I'll run over." (Tr. 319)
Deputy Charles Smith suffered a bruised right leg, a badly scratched and swollen left arm, and a split jaw. He was hospitalized for seven days. The jury saw color photographs of the injuries.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that a continuance for additional time to file pretrial motions should have been allowed after the state dismissed two of the four charges in the bill of information less than three days prior to trial. LSA-C.Cr.P. arts. 521, 703.
Originally, Trahan was charged with two counts of attempted first degree murder, a third count of aggravated criminal damage to property, and a fourth count of third offense DWI. Defendant's motion to waive a jury trial on count four was heard and granted. Therefore, the DWI charge was removed from this jury trial. At the same time, the state dismissed the second count of attempted murder. LSA-C.Cr.P. art. 691. Defendant moved to quash the remaining counts for misjoinder. Although the motion was denied, the state complied with the motion by dismissing count three. Since count one required a twelve man jury and count three a six man jury, the state acted properly; a different mode of trial was required for the two offenses. LSA-R.S. 14:30, 14:27, 14:55; LSA-C.Cr.P. arts. 782, 493. This left Trahan charged with one count of attempted first degree murder.
Defendant argues that the trial court abused its discretion in not granting a continuance, because the amendment to the bill of information altered his trial strategy. However, defendant has demonstrated no prejudice. All four charges were based on the same set of facts. The state's action granted the relief requested in defendant's motion, and the trial court did not abuse its discretion in denying a continuance.
Defendant filed a motion on the morning of trial to suppress the results of any scientific tests for intoxication and any inculpatory statements. The State stipulated that it would not attempt to introduce any evidence based on scientific tests for intoxication. The trial judge denied the motion to suppress statements because it was not filed timely. LSA-C.Cr.P. art. 521. There was no error.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER TWO, THREE, AND FOUR
Defendant contends that the trial court erred in instructing the jury that aggravated battery was a responsive verdict to the charge of attempted first degree murder, arguing lack of evidence of the essential elements of aggravated battery.
Aggravated battery is a statutory responsive verdict to a charge of attempted first degree murder. LSA-C.Cr.P. art. 814. However, if there is a total lack of evidence of any element of aggravated battery, the conviction must be reversed. State v. Dauzat, 392 So.2d 393 (La., 1980).
The jury had to find that defendant intentionally used force or violence upon Charles Smith, employing a dangerous weapon. An essential element of a battery is physical contact. State v. Dauzat, supra.
Defendant relies on the testimony of criminologist Ray Herd. In Herd's opinion, the Blazer was traveling approximately 35 miles per hour when it hit the patrol car. *68 His reconstruction of the impact established that the Blazer struck the patrol car on the left rear and pushed it in a straight line to the right. Since the deputy was standing adjacent to the car on the left side at the moment of impact, it is argued that the path of the cars was away from Smith. Thus, defendant claims the physical evidence shows he did not intend a collision with Smith, and neither car actually hit Smith.
When he drove his Blazer at Smith's car, with Smith close beside it, defendant must have realized that serious consequences were reasonably certain. His unsolicited statement to Nunez indicates he tried to run Smith down. General criminal intent, the intent required for aggravated battery, was present. LSA-R.S. 14:10(2); In re Glassberg, 230 La. 396, 88 So.2d 707 (1956); State v. Brumfield, 329 So.2d 181 (La., 1976).
Defendant contends that Smith's injuries were caused by the altercation on the ground following the collision and this constituted, at most, simple battery. The pictures of the injuries indicate more force than would have been generated by a hand to hand struggle. Smith said the Blazer "struck the car then struck me." (Tr. 166) The evidence establishes physical contact either between the deputy and the Blazer or between the deputy and the patrol car when it was struck by the Blazer. There is no question that an automobile can constitute a dangerous weapon if used in a manner likely to cause death or great bodily harm.
A reasonable trier of fact could have concluded beyond a reasonable doubt that the essential elements of an aggravated battery were proven. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER FIVE
It is contended that the sentence is excessive and there was no compliance with LSA-C.Cr.P. art. 894.1.
The trial court was furnished with a lengthy presentence investigation report which revealed both favorable and unfavorable information. When sober, the defendant is a hard-working, industrious, family man; when drunk, he is violent. He has had previous encounters with the law, five involving batteries. The trial court carefully weighed all of the information, more than adequately complied with the statutory requirements relating to sentencing, and concluded that a four year sentence was appropriate. There is no abuse of discretion.
This assignment of error lacks merit.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judges William Norris, III and Fred Sexton, Jr., of the Court of Appeal, Second Circuit and Robert Lobrano of the Court of Appeal, Fourth Circuit participated in this decision as Associate Justices Ad Hoc joined by Justices Calogero, Dennis, Watson and Lemmon.
[1] It was learned that the property belonged to defendant's father.