KNOLL, Justice.*
| iThis criminal action presents the res nova issue of whether the offense of vehicular homicide is a crime of violence as defined by La.Rev.Stat. § 14:2(B), either as “an offense that has, as an element, the use ... of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon.”
While driving his vehicle in a highly intoxicated state, defendant, Craig Oli-phant, struck and killed a pedestrian, Cra-vis M. Scott, and subsequently pled guilty to the charge of vehicular homicide. The District Court ultimately sentenced defendant to twenty-five years at hard labor, with the first fifteen years without benefit of probation, parole, or suspension of sentence, and designated the offense a crime of violence. The appellate court affirmed the conviction, reversed the portion of the sentence designating vehicular homicide a crime of violence, vacated the twenty-five-year sentence, and remanded the matter for resentencing. We granted this writ to provide guidance to the lower courts regarding whether the |?pffense of vehicular homicide fits the general definition of a crime of violence under La.Rev.Stat. § 14:2(B). State v. Oliphant, 12-1176 (La.11/9/12), 100 So.3d 822. For the following reasons, we find the offense of vehicular homicide is a crime of violence pursuant to La.Rev.Stat. § 14:2 as the offense involves the use of physical force and the substantial risk that force will be used against another person in the commission of the offense as well as the use of a dangerous weapon. Finding no error in the District Court’s designation, we reverse the judgment of the Court of Appeal, vacate defendant’s sentence, and remand this matter to the District Court for resen-tencing.
FACTS
On February 8, 2009, at approximately 10:15 p.m., defendant was driving his 2006 Jeep Grand Cherokee SUV northbound on U.S. Highway 165 from Bastrop to Bonita, Louisiana, when he crossed the clearly marked fog line to the right. The vehicle traveled an undetermined distance on the eight foot, eight inch wide shoulder before it struck Scott who was standing on the shoulder in front of his mother’s residence. The impact threw Scott into Fredrick Matthews who was standing next to Scott at *167 the time of impact. Both men came to rest in a ditch nearby. Matthews suffered injuries as a result of the accident, but Scott was pronounced dead at the scene. Parts of the vehicle were located on the shoulder and in the ditch area, including what appeared to be part of a bumper, a mirror, an antenna, and headlight lens pieces.
After the accident, defendant continued driving northward and was subsequently stopped by a Morehouse Parish Sheriffs deputy, after the officer observed “major damage to passenger side” of the vehicle. When questioned by the officer, defendant denied having been in an accident and stated he had had two beers. The officer then ordered defendant to return to the scene. When he arrived |son the scene, officers advised him of his Miranda rights and questioned him about the accident. Defendant denied consumption of any alcoholic beverages after the crash, but still performed poorly on a standard, field sobriety test. Officers then transported him to the Morehouse Parish jail, where it was determined through an intoxilyzer breath test defendant’s blood alcohol content was .247g%. The parts of the vehicle collected at the scene were subsequently compared and matched to defendant’s vehicle. Defendant later explained he thought he had hit a mailbox or trash can when he, was looking down for his cellphone.
The State charged defendant by bill of information with vehicular homicide, a violation of La.Rev.Stat. § 14:32.1, and hit- and-run driving, a violation of La.Rev.Stat. § 14:100. While incarcerated, defendant was released from jail, on his own recognizance, to attend a substance abuse program at the Rayville Recovery Center. After completion of the program, defendant was returned to the Morehouse Parish jail until he posted bond.
On July 19, 2009, defendant pled guilty to vehicular homicide. As a part of the plea bargain, the State agreed to dismiss the charge of hit-and-run driving and to not prosecute defendant for any other offenses arising out of the incident. Following a very lengthy sentencing hearing, the District Court sentenced defendant to twenty-five years in prison at hard labor, with credit for time served, and imposed a $10,000 fine or, in default of payment thereof, ordered defendant serve one year in jail. The default time was to run consecutively to the hard labor sentence. Defendant was also ordered to participate in a court-approved substance abuse and driver improvement programs. Pursuant to La.Code Crim. Proc. art. 890.1, the District Court designated the offense a crime of violence as defined by La.Rev.Stat. § 14:2(B). Thereafter, defendant filed a motion to reconsider sentence, which the District Court granted, amending his sentence to provide only |4the first fifteen years of the twenty-five-year sentence would be served without benefit of parole, probation, or suspension of sentence.
On appeal, the Court of Appeal, Second Circuit, affirmed defendant’s conviction, reversed the portion of the sentence designating vehicular homicide a crime of violence, and vacated the sentence and fine as excessive, remanding the matter to the District Court with instructions to impose a'sentence not to exceed fifteen years imprisonment at hard labor with no specific direction with respect to limits on parole eligibility. State v. Oliphant, 46,927 (La.App. 2 Cir. 3/21/12), 93 So.3d 603. In so ruling, the appellate court reasoned vehicular homicide would not qualify as a crime of violence because commission of the offense “does not necessarily require, as an essential element, the use, the attempted use, or threatened use of 'physical force against the person of another.” Id. at p. 7, 93 So.3d at 608. Furthermore, it found *168 the Legislature’s exclusion of the crime from La.Rev.Stat. § 14:2(B), when other homicides were explicitly included, was strong evidence of the Legislature’s intent not to categorize this offense as a crime of violence. Though rejecting defendant’s assertion the District Court conducted an inadequate review of all mitigating and aggravating factors under La.Code Crim. Proc. art. 894.1, the appellate court nevertheless found the sentence unconstitutionally excessive, reasoning “defendant is not the worst of offenders for whom maximum, or near maximum, sentences are reserved” because he “is a first-time felony offender with no record of any prior DWI violations or any other criminal offense.” Id. at p. 19, 93 So.3d at 614. After highlighting defendant’s assistance in securing financial benefits for the victim’s family and his voluntary completion of an in-house substance abuse program, the appellate court concluded a lesser sentence would have served the same purpose as the penalty imposed by the District Court.
J^DISCUSSION
Our trial and appellate courts are divided on the issue of whether vehicular homicide is a crime of violence. Thus, it falls to this Court to determine the proper interpretation and application of the relevant criminal provisions.
The interpretation of any statutory provision starts with the language of the statute itself. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ. Code art. 11; La.Rev.Stat. § 1:3; see also Snowton v. Sewerage and Water Bd., 08-399, pp. 5-6 (La.3/17/09), 6 So.3d 164, 168. Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3.
Moreover, it is well-established criminal statutes are subject to strict construction under the rule of lenity. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Criminal statutes, therefore, are given a narrow interpretation, and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State. State v. Becnel, 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960. Bound by a strict interpretation of the plain language of the criminal provisions, we now turn to the statutes at issue.
|rA.t the time of defendant’s sentencing, La.Code Crim. Proc. art. 890.1 required the trial court to designate whether the crime involved was a crime of violence, providing:
A. When the court imposes a sentence, the court shall designate whether the crime involved is a crime of violence or an attempted crime of violence as defined or enumerated in R.S. 14:2(B).
B. Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined or enumerated in R.S. 14:2(B) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior *169 unless diminution of sentence is prohibited by R.S. 15:571.3(0 or (D).
La.Code Crim. Proc. art. 890.1.[1]
l7La.Rev.Stat. § 14:2(B) defines a “crime of violence” as
an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon.
The statute then enumerates a number of offenses and attempted offenses, which constitute crimes of violence:
(1) Solicitation for murder
(2) First degree murder
(3) Second degree murder
(4) Manslaughter
(5) Aggravated battery
(6) Second degree battery
(7) Aggravated assault
(8) Mingling harmful substances
(9) Aggravated rape
(10) Forcible rape
(11) Simple rape
(12) Sexual battery
(13) Second degree sexual battery
(14) Intentional exposure to AIDS virus
(15) Aggravated kidnapping
(16) Second degree kidnapping
(17) Simple kidnapping
(18) Aggravated arson
(19) Aggravated criminal damage to property
(20) Aggravated burglary
*170 (21) Armed robbery
(22) First degree robbery
(23) Simple robbery
(24) Purse snatching
(25) Extortion
(26) Assault by drive-by shooting
(27) Aggravated crime against nature
(28) Carjacking
(29) Illegal use of weapons or dangerous instrumentalities
(30) Terrorism
(31) Aggravated second degree battery
(32) Aggravated assault upon a peace officer with a firearm
(33) Aggravated assault with a firearm
(34) Armed robbery; use of firearm; additional penalty
(35) Second degree robbery
(36) Disarming of a peace officer
(37) Stalking
(38) Second degree cruelty to juveniles | s(39) Aggravated flight from an officer
(40) Aggravated incest
(41) Battery of a police officer
(42) Trafficking of children for sexual purposes
(43) Human trafficking
(44) Home invasion
La.Rev.Stat. § 14:2(B). Because this list of enumerated crimes is merely illustrative, not exhaustive, unlisted offenses may be denominated as crimes of violence under the general definition of the term provided by the statute. See, e.g., State v. Smith, 45,430 (La.App. 2 Cir. 8/11/10), 47 So.3d 553, writ denied, 10-2384 (La.3/4/11), 58 So.3d 474 (battery of a correctional facility employee is a crime of violence); State v. Hinton, 08-1849 (La.App. 1 Cir. 2/13/09), 6 So.3d 242, 244 (list illustrative, not exhaustive); State v. Fontenot, 06-0226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935 (molestation of a juvenile a crime of violence as defined in La.Rev.Stat. § 14:2).
While the Legislature has plenary authority to define crimes and prescribe punishments and remains essentially free to add any crime to La.Rev.Stat. § 14:2(B) it sees fit as a shorthand means of increasing the severity of the offense for sentencing purposes, courts do not have that same discretion. Rather, the only standard provided to us by the Legislature for determining whether an unenumerated crime is a crime of violence is the general rule that the offense must (1) have as “an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense,” or (2) “involve[ ] the possession or use of a dangerous weapon.” La.Rev.Stat. § 14:2(B).
As stated earlier, the offense at issue herein is vehicular homicide. Criminal homicide is defined as “the killing of a human being by the act, procurement, or |flculpable omission of another” and consists of five grades: (1) first-degree murder; (2) second-degree murder; (3) manslaughter; (4) negligent homicide; and (5) vehicular homicide. La.Rev.Stat. § 14:29. Vehicular homicide, in particular, is defined as
the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing:
*171 (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood....
La.Rev.Stat. § 14:32.1.
While first-degree murder, second-degree murder, and manslaughter are among the enumerated offenses explicitly listed in La.Rev.Stat. § 14:2, vehicular homicide is not. Therefore, this Court must decide whether the offense herein fits within the general definition of a crime of violence as either an offense that involves the use of physical force and substantial risk that force will be used against the person or property of another in committing the offense, or the possession or use of a dangerous weapon.
In the present case, given the explicit exclusion of vehicular homicide and the ambiguity arising from the variety of offenses enumerated, the court of appeal essentially applied the rule of lenity by reading “intentional” into the definitional part of La.Rev.Stat. § 14:2(B), giving the term “use” its first dictionary meaning, ie., “the act or practice of employing.” Webster’s Collegiate Dictionary 1288 (1977). This narrow construction, applauded and further advanced by the defense, 110finds significant support in the United States Supreme Court’s decision in Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).
In that immigration/deportation case, the Supreme Court interpreted 18 U.S.C. § 16(a) & (b), which defined a crime of violence as “an offense that has as an element the use ... of physical force against the person or property of another,” 18 U.S.C. § 16(a), or as “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense,” 18 U.S.C. § 16(b). In both instances, the Leocal court found “the most common employment of the word ‘use’ connotes the intentional availment of force,” and therefore, “ ‘use’ requires active employment.” Id. at 9, 125 S.Ct. at 382 (citing Bailey v. U.S., 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). The Court continued:
While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would “use ... physical force against” another when pushing him; however, we would not ordinarily say a person “use[s] ... physical force against” another by stumbling and falling into him....
⅜ * *
[Likewise] [t]he reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person’s conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.... In no “ordinary or natural” sense can it be said that a person risks having to “use” physical force against another person in the course of operating a vehicle while intoxicated and causing injury.
*172 |n/d. at 9-10,125 S.Ct. 382-83. The Court then concluded DUI offenses, which have no mens rea component or require only a showing of negligence in the operation of a vehicle, are not crimes of violence under 18 U.S.C. § 16.[2]
While this reasoning is persuasive authority, we are not bound by it in the interpretation of our state statutes. See Shell Oil Co. v. Secretary, Revenue and Taxation, 96-0929 (La.11/25/96), 683 So.2d 1204, 1210 (“The Supreme Court has recognized that it is bound by our interpretation of Louisiana’s statutes.”); Seegers v. Parker, 256 La. 1039, 241 So.2d 213 (1970)(holding decisions of federal courts interpreting federal statutes are highly persuasive in interpreting state statutes patterned after those federal statutes); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (La.1963)(same). Rather, we are bound by our rules of statutory construction, which require us to read words in their context and in light of the surrounding terms. La.Rev.Stat. § 1:3; Boudreaux v. Louisiana Dep’t of Pub. Safety and Corr., 12-0239, p. 5 (La.10/16/12), 101 So.3d 22, 26.
Examining the term “use” in its proper context, we significantly note that, while a majority of the enumerated offenses in La.Rev.Stat. § 14:2(B) clearly require the intentional use of force or violence (or the threat thereof) against persons or property, e.g., aggravated battery, second-degree battery, forcible rape, sexual battery, see La.Rev.Stat. § 14:2(B)(5),(6),(10),(12), others clearly do not, e.g., second-degree murder, manslaughter, extortion, illegal use of weapons or dangerous instrumentalities, stalking, second-degree cruelty to juveniles, human trafficking, see La.Rev.Stat. § 14:2(B)(3),(4),(25),(29),(37),(38),(43).
Therefore, taken in their entirety, the enumerated offenses do not require a reading of the term use as intentional or necessitating active employment. In any event, general |12criminal intent is sufficient and is present “when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” La.Rev. Stat. § 14:10(2). “In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal.” State v. Holmes, 388 So.2d 722, 727 (La.1980). Therefore, a defendant, as in this case, would have the requisite general intent to commit the crime of vehicular homicide by taking to the road in a highly intoxicated condition and striking a pedestrian with sufficient force to kill.
The more pertinent question, rather, is whether the offense involves the use of physical force and the substantial risk that force will be used against another person in the commission of the offense. As the State asserts, an essential element of vehicular homicide is the killing of another, which entails the use of physical force on the person of the victim, caused by the offender’s operation of a motor vehicle in an intoxicated state. Here, “the use of force against the person of another” was satisfied when the extremely intoxicated defendant struck the victim with his SUV. Likewise, it logically follows the operation of a motor vehicle in an intoxicated state, by its very nature, does involve a substantial risk physical force may be used against the person or property of another, especially in the course of committing the of *173 fense of vehicular homicide, which by definition is the killing of another person through the operation of a motor vehicle. Therefore, we find the offense of vehicular homicide clearly entails the use of physical force and the substantial risk that force will be used against the person of another.
Moreover, by definition, a crime involving the use of a dangerous weapon is also a crime of violence. A “ ‘[djangerous weapon’ includes any gas, liquid or other substance or instrumentality which, in the manner used, is calculated or |islikely to produce death or great bodily harm.” La. Rev.Stat. § 14:2(A)(3). As this Court has observed in the context of a prosecution for aggravated battery, ie., a battery committed with a dangerous weapon, La.Rev. Stat. § 14:34, “[t]here is no question that an automobile can constitute a dangerous weapon if used in a manner likely to cause death or great bodily harm.” State v. Trahan, 416 So.2d 65, 68 (La.1982).
In Trahan, the defendant intentionally used his car as a weapon by ramming a patrol unit at 30 m.p.h. and running down the police officer standing next to the vehicle after a wild, high-speed chase in the middle of a hurricane evacuation zone. Defendant then threatened another officer: “you’re going to be the next one' I’ll run over.” Trahan, 416 So.2d at 67. The evidence, thus, left no doubt defendant acted deliberately with the general intent required by the offense because “he must have realized that serious consequences were reasonably certain.” Id., 416 So.2d at 68; see La.Rev.Stat. § 10(2).
No evidence suggests the defendant in the present case deliberately ran down the victim and his friend as they stood off the highway by the mailbox of the home occupied by the victim’s mother. Nevertheless, the evidence does show defendant, with a spectacularly high blood alcohol content of .247g%, veered out of his lane of travel, drove along the fog line, and sent both men flying into a ditch upon impact, killing one man and injuring another. Thus, the evidence leaves no doubt defendant, as previously noted, had the general criminal intent necessary to commit vehicular homicide when he drove his SUV in an extremely intoxicated state and struck the victim with sufficient force to kill upon impact. Under these circumstances, we agree with the State that, in the manner of its use by its highly intoxicated driver, defendant’s vehicle was a multi-ton instrumentality “likely to |14produce death or great bodily harm,” and the offense of vehicular homicide is, therefore, a crime of violence.
The District Court articulated this very rationale at sentencing when it observed defendant’s actions were “no different from a person putting a bullet in a gun, pointing that gun at another human being, pulling the trigger, and killing that person. A gun is a dangerous weapon and so is a motor vehicle in the hands of an intoxicated person, especially one who was as intoxicated as [defendant] on the night of this tragedy.”
Accordingly, we find, under the explicit and plain language of the relevant statutory provisions, vehicular homicide does qualify as a crime of violence. Therefore, because the District Court did not err in its designation, we reverse the ruling of the Court of Appeal to the contrary.
Having found vehicular homicide is a crime of violence, we must now address the corresponding sentencing consequences of that designation. In the present case, the District Court originally sentenced defendant to twenty-five years without parole eligibility, but reduced the term of parole ineligibility to fifteen years on reconsideration. However, because vehicular homicide is a crime of violence, *174 defendant must serve at least eighty-five percent of his full term before becoming eligible for early release on parole pursuant to La.Rev.Stat. § 15:574.4(B)(1), which provides: “Notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least eighty-five percent of the sentence imposed before being eligible for parole.” Thus, by operation of law, defendant must serve at least twenty-one years and three months of his twenty-five-year sentence before becoming eligible for early release, not fifteen years as the District Court ordered on reconsideration.
| ^Therefore, we find it necessary to vacate defendant’s sentence and remand this matter to the District Court with -instructions to reconsider defendant’s sentence in view of the mandatory provisions on parole eligibility and early release for crimes of violence.
CONCLUSION
In summary, we find the offense of vehicular homicide fits the definition of a crime of violence under La.Rev.Stat. § 14:2 in that, by its definition, it requires the use of physical force and the substantial risk that force will be used against another person in its commission as well as the use of a dangerous weapon. We reverse the judgment of the court of appeal holding to the contrary, vacate defendant’s sentence, and remand this matter to the District Court for reconsideration of sentence.
DECREE
For the foregoing reasons, the judgment of the Court of Appeal is hereby reversed, defendant’s sentence is vacated, and this matter is remanded to the District Court for reconsideration of sentence.
REVERSED, SENTENCE VACATED, and REMANDED.
Judge JEFFERSON D. HUGHES III was assigned as Justice pro tempore, sitting for KIMBALL, C.J. for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.
HUGHES, Justice, dissents with reasons.

 Judge Jefferson D. Hughes III was assigned as Justice pro tempore, sitting for Kimball, C.J. for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

. In 2012 La. Acts 160, the Legislature completely rewrote La.Code Crim. Proc. art. 890.1 to provide a trial court with the authority to depart from a mandatory minimum term of imprisonment and/or to restore eligibility for parole, probation, or suspension of sentence otherwise denied by law under certain specified conditions in which the State, defendant, and the court agree to that result. As amended, however, La.Code Crim. Proc. art. 890.1(D) expressly excludes crimes of violence and sex offenses:
A.Notwithstanding any other provision of law to the contrary, if a felony or misdemeanor offense specifies a sentence with a minimum term of confinement or a minimum fine, or that the sentence shall be served without benefit of parole, probation, or suspension of sentence, the court, upon conviction, in sentencing the offender shall impose the sentence as provided in the penalty provisions for that offense, unless one of the following occurs:
(1) The defendant pled guilty pursuant to a negotiated plea agreement with the prosecution and the court, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.
(2) In cases resulting in trial, the prosecution, the defendant, and the court entered into a post-conviction agreement, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.
B. If such agreements are entered into between the prosecution and the defendant, the court, at sentencing, shall not impose a lesser term of imprisonment, lesser fine, or lesser period of sentence served without benefit of parole, probation, or suspension of sentence than that expressly provided for under the terms of the plea or post-conviction agreement.
C. No plea or post-conviction agreement shall provide parole eligibility at a time earlier than that provided in R.S. 15:574.4.
D. Nothing in this Article shall apply to a crime of violence as defined in R.S. 14;2(B) or a sex offense as defined in R.S. 15:541.
E. At the time the sentence is imposed pursuant to this Article, the Uniform Commitment Sentencing Order shall specify that the sentence is imposed pursuant to the provisions of this Article.

. In so ruling, the Supreme Court looked specifically at our vehicular negligent injuring statutes, La.Rev.Stat. §§ 14:39.1(A) & 14:39.2(A). Id. at 8, n. 6, 125 S.Ct. at 382, n. 6.