VICTORY, J.,
dissents.
hi dissent from the majority opinion because in my view, La. R.S. 14:100.13 is not preempted by federal law. Preemption only occurs under Arizona (1) where Con *466 gress “withdraws specified powers from the states by enacting a statute containing an express preemption provision”; (2) where the states attempt to regulate “conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance”; or (3) where compliance with both federal and state regulations is a physical impossibility. Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 2500-01, 183 L.Ed.2d 351 (2012). While it is certain that the first and third preemption doctrines do not apply here, the majority finds the statute at issue preempted because Congress has occupied the field of “alien registration.” However, the driving requirements at issue here have nothing to do with alien “registration,” and I disagree with the broad assumption that anything having to do with alien registration documents is preempted. Further, I disagree with the majority’s interpretation of the statute.
It is axiomatic that the State is vested with the authority to regulate public roads and highways under its police power. Regulations pertaining to the issuance of motor vehicle drivers’ licenses constitute an exercise of the police power to |2regulate the use of the highways in the interest of the public safety and welfare. Majorie Shields, The Validity of State Statutes, Regulations, or other Identification Requirements Restricting or Denying Driver’s Licenses to Illegal Aliens, 16 A.L.R.6th 131 (2006). This power to license carries with it the power to prescribe reasonable conditions precedent to the issuance of such licenses and to classify drivers for special regulation, provided such classifications are not unreasonable or arbitrary. Id. La. R.S. 14:100.13 is part of a group of statutes requiring alien students and nonresident aliens to have documentation demonstrating lawful presence in the United States in order to obtain a Louisiana driver’s license and to be lawfully present in the United States in order to operate a motor vehicle. For instance, while one of the requirements for obtaining a license is a social security number, La. R.S. 32:409. 1(A)(2)(d)(vi) provides that an alien residing in Louisiana who is ineligible to obtain a social security number can instead “present a document demonstrating lawful presence in the United States in a status in which the alien individual may be ineligible to obtain a social security number.” As the majority opinion recognizes, “the Supremacy Clause apparently presents no obstacle to Louisiana requiring proof of lawful presence before issuing a driver’s license.” Op. at 465, n. 21 (citing Arizona Dream Act Coalition v. Brewer, 945 F.Supp.2d 1049, (D.Ariz.5/16/13), 2013 WL 2128315).[1] Likewise, there are penalties for providing false information |sto obtain *467 a driver’s license in Louisiana. Generally, the individual’s license or pending application for a license shall be suspended, revoked, or cancelled. La. R.S. 32:409.1(E). Further, “whoever commits the crime of falsifying information required for the purpose of obtaining a driver’s license shall be fined not more than five hundred dollars, imprisoned for not less than six months, or both.” La. R.S. 14:100.14(0). In U.S. v. Alabama, 691 F.3d 1269, 1298-99 (11th Cir.(Ala.) 8/20/12), cert. denied, - U.S. -, 133 S.Ct. 2022, 185 L.Ed.2d 905 (2013), the court held that an Alabama statute making it a felony for an unlawfully present alien to attempt to get a driver’s license by providing fraudulent information was not preempted by federal immigration law.[2] La. R.S. 14:100.14(0) criminalizes the same type of behavior criminalized in Alabama which the 11th Circuit found was not preempted. In addition, La. R.S. 14:100.14(0) apparently applies to anyone, not just aliens.[3]
Regarding the particular statute at issue, La. R.S. 14:100.13, the majority reasons that because federal law mandates that aliens are required to carry proof of status on their person at all times (8 U.S.C. 1301-1306), and the failure to do so is a misdemeanor, a state statute which criminalizes failure to carry such proof in a more |4particularized circumstance, even one related to the state’s police power, is preempted. If that were true, then the above statutes are also preempted, even the one that requires presenting proof of lawful presence to obtain a driver’s license, because the alien would have to be “carrying” proof of lawful presence in order to obtain the license. Further, the statute at issue does not appear to criminalize the failure to carry a document proving lawful presence on his person while driving. While La. R.S. 14:100.13(A) provides that “no alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States,” that is basically just a restatement that documentation demonstrating lawful presence is required to get a driver’s license under La. R.S. 32:409.1(A)(2)(d)(vi). The penalty provision, La. R.S. 14:100.13(0), provides that “whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.” Thus, La. R.S. 14:100.13(C), the penalty provision, punishes only “driving without lawful presence,” not driving without carrying documentation proving lawful presence.[4] As the statute does not appear to *468 punish failure to carry registration while operating a vehicle, the majority’s conclusion that “the broader provision,” i.e., “failure to carry registration generally” under Arizona, “necessarily includes the narrower one,” i.e., “failure to cany registration while operating a vehicle,” is incorrect. Op. at 464-65.
In addition to misinterpreting the statute, the majority simply reads Arizona too broadly. As the Supreme Court previously held in De Canas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976):
|sPower to regulate immigration is unquestionably exclusively a federal power. But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power whether latent or exercised ... [T]he fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.
This principle is not altered by the holding in Arizona. This was exemplified by an Eighth Circuit case which considered whether a city ordinance, which limited hiring and providing rental housing to “illegal aliens” and “unauthorized aliens,” was preempted by federal immigration law in light of Arizona. Keller v. City of Fremont, 719 F.3d 931 (8th Cir.(Nev.) 6/28/13).[5] The rental provisions of the ordinance made it unlawful for any person or business entity to rent to, or permit occupancy by, an “illegal alien.” To implement this restriction, prospective renters were required to obtain an occupancy license, which required proof of citizenship or, if an alien, immigration status. After issuance of the occupancy license, the city police department was required to ask the federal government to verify the immigration status, and if the renter was “unlawfully present,” the occupancy license was revoked and violators were fined $100 per day. Relying on De Canas, the Court rejected the argument that the rental provisions intruded on a federally protected “field,” alien removal, finding that the rental provisions “neither determine ‘who should or should not be admitted into the country,’ nor do they more than marginally affect ‘the conditions under which a legal entrant may remain.’ ” 719 F.3d at 941. Further, the court rejection the notion that the ordinance intruded on the federally protected field | r,of alien registration. The court distinguished the ordinance from the law invalidated in Arizona, which imposed state criminal sanctions for an alien’s willful violation of federal alien registration laws, reasoning as follows:
The occupancy license scheme is nothing like the state registration laws invalidated in ... Arizona. The Ordinance requires all renters, including U.S. citizens and nationals, to obtain an occupancy license before renting a dwelling unit in the City. It does not apply to all aliens — it excludes non-renters. Al *469 though prospective tenants must disclose some of the same information that aliens must disclose in complying with federal alien registration laws, that does not turn a local property licensing program into a preempted alien registration regime. To hold otherwise would mean that any time a State collects basic information from its residents, including aliens — such as before issuing driver’s licenses — it impermissibly intrudes into the field of alien registration and must be preempted. It defies common sense to think that Congress intended such a result.
Id. at 943.
I agree with the reasoning of Keller and would apply it in this case. Just as the ordinance in Keller, the statute here is distinguishable from the broad statute in Arizona. The licensing and driving provisions require all drivers, including U.S. citizens, to obtain a license from the state in order to drive on state highways. Further, the statute at issue does not apply to all aliens, only drivers. The fact that a prospective driver must disclose some of the same information that aliens must disclose in order to comply with federal alien registration laws does not turn a statewide driver’s license program into a preempted alien registration requirement. It “defies common sense” to think that any time a state collects basic information from aliens before issuing a driver’s license or allowing them to drive on state roads that the state has impermissibly intruded into the field of alien registration.
The court in Alabama also rejected the argument that the anti-harboring provisions in the ordinance were preempted by the federal immigration anti-harboring provisions, even though the ordinance defined “harboring” more expansively and 17imposed penalties not imposed by the federal statute. The court found that “[pjlaintiffs made no showing that Congress intended to preempt States and local governments from imposing different penalties for the violation of different state or local prohibitions simply because the prohibited conduct is labeled ‘harboring.’ ” Id. at 944. Likewise, there is nothing to show that Congress intended to preempt states from punishing an alien who drives without lawful presence, especially given that proof of lawful presence is a requirement for obtaining a driver’s license.
In my view, a state is simply not prevented from asking an alien to provide proof of lawful presence in order to obtain a license, and should certainly not be prevented from punishing an alien with criminal penalties for obtaining a. license with fraudulent proof of lawful presence or for driving when they are not lawfully present. The federal government simply has no interest in a state’s requirements for driving within that state. For all of the above reasons, I respectfully dissent.

. In fact, "[t]hrough the REAL ID Act of 2005, Pub.L. No. 109-13, § 202(c)(2)(B), 119 Stat. 231, 313 (codified as note to 49 U.S.C. § 30301), Congress encouraged individual states to require evidence of lawful status as a prerequisite to issuing a driver's license or identification card to an applicant.” U.S. v. Alabama, 691 F.3d 1269, 1298 (11th Cir.(Ala.) 8/20/12), cert. denied, - U.S. -, 133 S.Ct. 2022, 185 L.Ed.2d 905 (2013).
The REAL ID Act provides that a federal agency may not accept, for any official purpose, a driver's license or ID card issued by a state to any person unless the state is meeting the requirements of the Act. Section 202(c)(1) of the Act lists the types of identification information that must be provided before a state may issue a driver’s license or identification card, and Section 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. However, while a driver's license from a noncomplying state may not be accepted by a federal agency for federal purposes, the Act does not mandate implementation by individual states. In other words, states may issue driver's licenses and identification cards without complying with the Act.

.The court reasoned as follows:
The REAL ID Act thus does not purport to comprehensively regulate driver's licenses, ... Rather, it leaves the field essentially open, giving room for the states to adopt different policies concerning this subject. See H.R.Rep. No. 109-72, at 177 (2005) (Conf.Rep.), reprinted in 2005 U.S.C.C.A.N. 240, 302 (noting that the REAL ID Act "does not directly impose federal standards” and that “states need not comply with the listed standards”). Given the limited scope of the REAL ID Act, we do not see have it forecloses Alabama’s decision to make it a crime for an unlawfully present alien to attempt to get a driver's license or identification card once it has decided that such aliens are ineligible for these documents.
691 F.3d at 1299.

. While this provision is in the same part of the revised statutes as the statute at issue, "Prevention of Terrorism on the Highways,” and is entitled "Giving false information regarding lawful presence in the United States in order to obtain a driver’s license,” the penalty provision apparently applies to anyone who gives false information to get a driver’s license.

. It is well established that criminal statutes are subject to strict scrutiny under the rule of lenity. State v. Oliphant, 12-1176 *468 (La.3/19/13), 113 So.3d 165, 168; State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274.

. One portion of the ordinance required every business to participate in the “E-Verify Program,” a federal database that allows employers to verify the work-authorization status of prospective employees, and provided that violators could lose their business licenses, permits, contracts, grants or loans from the City. The parties did not appeal the district court ruling that this portion of the ordinance was not preempted because "it was ‘essentially a licensing or similar law’ and thus falls within the savings clause” in the federal immigration law under Chamber of Commerce v. Whiting, — U.S. -, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011). 719 F.3d at 938.