LOBRANO, J.,
dissents.
Ill respectfully dissent from the majority opinion that reverses the district court’s judgment and quashes the administrative subpoena duces tecum served upon the Orleans Parish School Board (“OPSB”) by the Inspector General for the City of New Orleans (“OIG”). I disagree with the majority’s finding that the OIG had no legal authority to issue the administrative subpoena.
The issues presented in this appeal are whether La. R.S. 33:9613 grants the OIG the authority to issue an administrative subpoena to the OPSB, and if so, does the statute conflict with the Louisiana Constitution or laws.
In Louisiana Federation of Teachers v. State, 2013-0120, 2013-0232, 2013-0350, p. 21 (La.5/7/13), 118 So.3d 1033, 1048, the Louisiana Supreme Court stated:
[bjecause the provisions of the Louisiana Constitution are not grants of power,, but instead are limitations on the otherwise plenary power of the people of the state, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. Consequently, a party challenging the constitutionality of a legislative instrument must point to a particular provision of the constitution that would prohibit the enactment of the legislative instrument and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the legislative instrument in question.
\2Id. at p. 21, 118 So.3d 1033, 1048 (citations omitted). The Court further stated that “because it is presumed that the legislature acts within its constitutional authority in promulgating a legislative instrument, this court must construe a legislative instrument so as to preserve its constitutionality when it is reasonable to do so.” Id.- at p. 22, 118 So.2d at 1040 (citations omitted).
The OIG derives its authority from the City of New Orleans Home Rule Charter Section 9-401, which provides:
(1)The Council shall by ordinance create an Office of Inspector General (OIG) and otherwise provide with respect thereto.
(2) The OIG shall provide for a full-time program of investigation, audit, inspections, and performance review to provide increased accountability and oversight of entities of city government or entities receiving funds through the city, and to assist in improving agency operations and deterring and identifying, fraud, waste, abuse, and illegal acts. The OIG is specifically authorized to *621 conduct audits of City entities. The OIG shall also provide for an Independent Police Monitor Division, charged with monitoring the operations of the New Orleans Police Department, particularly in the areas of civilian and internally-generated complaints, internal investigations, discipline, significant uses of force, and in custody deaths
The limits of the OIG’s authority are set forth in New Orleans City Code Article XIII Section 2-1120(10) [1]
|4In 2008, the Louisiana Legislature enacted La. R.S. 33:9613, which gave the *622 OIG the ability to issue administrative subpoenas. Louisiana R.S. 33:9618, relative to investigative powers, states, in pertinent part:
A.(4)(a) In the performance of its duties, a local office of inspector general in the city of New Orleans or parish of Jefferson may issue an administrative subpoena duces tecum to require the production of books, records, documents, or other evidence deemed relevant or material to an investigation, audit, or inspection. The subpoena duces tecum shall be issued only in furtherance of the authority provided by local ordinance and by Subsections D and E of this Section and shall comply with all applicable constitutionally established rights and processes. [Emphasis added.] ⅝ * *
D. (1) A local ethics entity, ethics review board, or office of inspector general shall have the authority to examine, review, audit, inspect, and investigate the records, books, reports, documents, papers, correspondence, accounts, audits, inspections, reviews, recommendations, plans, films, tapes, pictures, computer hard drives, software data, hardware data, e-mails, instant messages, text messages, and any other data and material relevant to any matter under audit, investigation, inspection, or performance review of all entities of the local governmental subdivision or entities receiving funds through or for the benefit of the local governmental subdivision. [Emphasis added.]
Both Section 9^401 of the City of New Orleans Home Rule Charter and La. R.S. 33:9613(D)(1) give the OIG authority to investigate. Louisiana R.S. 33:9613(D)(1) also provides the entities that are subject to the OIG’s oversight. These include all entities receiving funds through the local governmental subdivision.
The City of New Orleans, through its Director of Finance, collects ad valorem taxes on behalf of OPSB, which are paid daily to the OPSB.[2] Thus, like |sthe trial court, I find that the OPSB receives funds through the City of New Orleans. Because La. Const. Art. VIII, § 13(C) was already in effect when the Louisiana Legislature enacted La. R.S. 33:9611 et seq., it should be presumed the legislature intended to give the OIG the authority to investigate the OPSB.
The majority finds otherwise, adopting the OPSB’s argument that the taxes collected on behalf of the OPSB neither become city funds nor benefit the city because the funds “never go into the City’s General Fund.” The majority erroneously concludes that an entity must receive funds “through the City’s General Fund” in order to fall within the purview of the statute. I believe the majority misinterprets the statute by ignoring its clear wording. “The interpretation of any statutory provision starts with the language of the statute itself.” Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 *623 (La.12/16/11), 79 So.Bd 987, 997. “When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used.” State v. Oliphant, 12-11176, p. 5 (La.3/19/13), 113 So.3d 165, 168 (citing La. C.C. art. 9; La. R.S. 1:4; and In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154). “Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning.” Oliphant, 12-1176, p. 5, 113 So.3d at 168 (citing |fiLa. C.C. art. 11; La. R.S. 1:3). “Words and phrases must be read with their context and construed according to the common and approved usage of the language.” Oliphant, 12-1176, p. 5, 113 So.3d at 168 (citing La. R.S. 1:3). “[W]hen interpreting a statute, the court should give it the meaning intended by the legislature.” Caldwell Parish School Board v. Louisiana Machinery Company, L.L.C., 12-1383, pp. 5-6 (La.1/29/13), 110 So.3d 993, 996-97. “[Ejvery word, sentence or provision in a law is presumed to be intended for some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed.” Id. at p. 6, 113 So.3d at 997.
The provision at issue, La. R.S. 33:9613(D)(1), is not ambiguous. If the legislature had intended an entity to receive funds through the City’s General Fund for .the statute to apply, it could have included such language, but it did not.
Furthermore, I find the trial court did not have to consider whether the OPSB is a quasi-public agency as defined by La. R.S. 33:9613(E)(3) because the board receives funds through the city and thus falls within the purview of the statute under subsection (D)(1).
Finally, I find no merit to the OPSB’s argument that La. R.S. 33:9613 conflicts with La. Const. VI, § 5(G)[3], which prohibits a home rule charter from containing any provision affecting a school board that is inconsistent with the Louisiana Constitution or law. The Louisiana Constitution provides the state legislature with the power to enact laws affecting parish and city school boards. See La. Const. Art. VIII, § 10; see also La. Const. Art. VIII, § § 1 and 9. Louisiana 17R.S. 33:9613 is a state statute enacted by the Louisiana Legislature and not a home rule charter provision adopted by local ordinance. The OPSB has not pointed to a particular provision of the state constitution or law that prohibits the enactment of La. R.S. 33:9613. Thus, I find pursuant to La. R.S. 33:9613 the OIG had the authority to issue the administrative subpoena to the OPSB.
Accordingly, I would affirm the district court’s judgment.

. New Orleans City Code Article XIII, Section 2-1120(10), provides, in pertinent part:
(10) Authority. The office of inspector general is authorized to engage in the following specific functions:
(a) Audit, evaluate, investigate, and inspect the activities, records, and individuals with contracts, subcontracts, procurements, grants, agreements, and other programmatic and financial arrangements undertaken by city government and any other function, activity, process, or operation conducted by city government.
(b) Audit the efficiency and effectiveness of city government operations and functions and conduct reviews of city government’s performance measurement system.
(c) Review the reliability and validity of the information provided by city government performance measures and standards.
(d) Initiate such investigations, audits, inspections, and performance reviews of city government as the Inspector General deems appropriate.
(e) Receive complaints of fraud, waste, abuse, inefficiency, and ineffectiveness from any source and investigate those complaints that the Inspector General deems credible.
(f) Engage in prevention activities, including, but not limited to, the prevention of fraud, waste, abuse, and illegal acts; review of legislation; review of rules, regulations, policies, procedures, and transactions; and the supplying, providing, and conducting of programs for training, education, certification and licensing.
(g) Conduct joint investigations and projects with other oversight or law enforcement agencies, including, but not limited to, the district attorney, attorney general, and the United States Attorney.
(h) Issue reports and recommend remedial actions to be taken by the city council, the office of the mayor, or municipal departments or agency heads to overcome or correct operating or maintenance deficiencies and inefficiencies identified by the Office of Inspector General.
(i) Issue public reports as set forth in subsections (8) and (9).
(j) Monitor implementation of recommendations made by the Office of Inspector General and other audit, investigative, and law enforcement agencies.
(k) Establish policies and procedures to guide functions and processes conducted by the Office of Inspector General.
(/) Require reports from the office of the mayor, city council, or city departments, agencies, boards, commissions, or public benefit corporations regarding any matter within the jurisdiction of the Office of Inspector General.
(m) File a complaint with the ethics review board or state board of ethics upon detecting a potential violation of any state ethics law or city ethics ordinance or code.
(n) Attend all city meetings relating to the procurement of goods or services by the city, including meetings involving third-party transactions.
(o) Assist any city department, agency, board, commission, public benefit corporation, the office of the mayor, the city council, any city council member, or the governing body of any agency, board, commission, or public benefit corporation, upon request, with implementation of any suggested legislation or legislative policy. In such an event, the Inspector General may assign personnel to conduct, supervise, or coordinate such activity.
(p) Do all things necessary to carry out the functions and duties set forth in this section, including promulgate rules and regulations regarding the implementation of responsibilities, duties and powers of the Office of Inspector General.

. La. Const. Art. VIII, § 13(C) provides, in part:
(C) Local Funds. Local funds for the support of elementary and secondary schools shall be derived from the following sources:
Second: The Orleans Parish School Board shall levy annually a tax not to exceed thirteen mills on the dollar of the assessed valuation of property within the city of New Orleans assessed for city taxation, and shall certify the amount of the tax to the governing authority. The governing authority shall have the tax entered on city tax rolls. The tax shall be collected in the manner, under the conditions, and with the interest and penalties prescribed by law for city taxes. The money thus collected shall be paid daily to the Orleans Parish School Board. [Emphasis added.]

. La. Const. Art. VI, § 5(G), relative to Home Rule Charter, provides:
(G) Parish Officials and School Boards Not Affected. No home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law.