STATE OF LOUISIANA

VERSUS

MARLON SAGASTUME

NO. 23-KA-224

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-6772, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

December 27, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Scott U. Schlegel

**APPEAL CONVERTED TO WRIT; WRIT DENIED**
    **FHW**
    **MEJ**

**SCHLEGEL, J., DISSENTS WITH REASONS**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Darren A. Allemand

COUNSEL FOR DEFENDANT/APPELLEE,
MARLON SAGASTUME
John A. Venezia

**WICKER, J.**

The State of Louisiana seeks appellate review of the trial court's January 19, 2023 judgment, granting defendants' motion to quash the two predicate convictions used to charge him with driving while intoxicated ("DWI"), third offense. For the following reasons, we convert the State's appeal to a writ application and deny the relief sought.

## PROCEDURAL HISTORY

On December 20, 2021, defendant, Marlon Sagastume, was charged by bill of information with driving while intoxicated, third offense, in violation of La. R.S. 14:98(A) and La. R.S. 14:98.3(A). The bill of information provides that on June 6, 2021, defendant operated a vehicle while intoxicated having been previously convicted of violating La. R.S. 14:98 on: 1) June 11, 2003, in the First Parish Court for the Parish of Jefferson; and 2) June 24, 2004 in the 29th Judicial District Court for the Parish of St. Charles. On February 8, 2022, defendant pled not guilty.

On August 30, 2022, defendant filed a motion to quash the bill of information, asserting that the two predicate convictions could not be used to enhance his DWI charge to a third offense, because the two predicate convictions fell outside of the ten-year "cleansing period" set forth in La. R.S. 14:98(C)(3). On November 28, 2022, the State filed a memorandum in opposition to defendant's motion to quash, arguing that the ten-year cleansing period had not elapsed, because La. R.S. 14:98(C)(3) provides that the time period under which defendant was "under an order of attachment for failure to appear" shall be excluded in computing the ten-year period. The State attached documents pertaining to defendant's two predicate convictions to its opposition memorandum.

On December 13, 2022, a hearing was held on the motion to quash, during which the parties presented their arguments and referred to the exhibits attached to the State's opposition memorandum, but no exhibits were introduced or admitted.

At the conclusion of the hearing, the trial court deferred its ruling, requested additional information from the State regarding the 2004 predicate conviction, and continued the matter to January 19, 2022.

Defendant filed a reply to the State's opposition on January 17, 2023, but the State did not file any additional memoranda or exhibits. At the hearing on January 19, 2022, the parties presented arguments but did not move to introduce any exhibits. The trial court granted defendant's motion to quash the two predicate convictions, and the State orally moved for an appeal. On February 14, 2023, at a hearing on another case involving defendant, the trial court admitted into evidence the State's exhibits regarding the predicate convictions that were attached to its memorandum in opposition to defendant's motion to quash. On February 15, 2023, the State filed a motion for appeal and request for designation of the record, which was granted.[1]

## LAW AND DISCUSSION

### Appealability of Judgment

Although the State's motion for appeal was granted by the trial court, our review reveals that the judgment granting defendant's motion to quash is not a final, appealable judgment. Under La. C.Cr.P. art. 912(A), "[O]nly a final judgment or ruling is appealable." A final judgment is one that puts an end to the proceedings. *State v. Millette*, 14-76 (La. App. 5 Cir. 10/29/14), 164 So.3d 865.

La. C.Cr.P. art. 912(B)(1) provides that the State may appeal "[a] motion to quash an indictment or any count thereof." However, a ruling on a motion to quash must be a final judgment that puts an end to the proceedings in order to be appealable. *Millette*, 164 So.3d at 865.

---

[1] In its motion, the State indicated that it had failed to formally offer, file, and introduce into evidence its exhibits at the December 13, 2022 and January 19, 2023 hearings, but it had rectified this omission on February 14, 2023.

In *Millette*, 164 So.3d at 865, the defendant was charged with DWI, third offense, and the trial court granted the defendant's motion to quash one of the predicate convictions. 165 So.3d at 865. The State appealed. This Court found that the trial court's judgment quashing one of the predicate offenses was not a final, appealable judgment, because the quashing of one of the predicate offenses did not put an end to the proceedings, but simply reduced the grade of the offense by eliminating the use of that particular conviction. *Id.*

In the present case, defendant did not seek to quash the entire bill of information against him or dismissal of the case; rather, he specifically sought to quash the two predicate convictions. Further, the trial court did not dismiss the case when it granted the motion to quash. At this point, in essence, defendant faces a charge of first offense DWI, in violation of La. R.S. 14:98(A) and La. R.S. 14:98.1. Accordingly, we find that the judgment at issue is not a final, appealable judgment. *See also State v. Lopez,* 17-507 (La. App. 5 Cir. 3/28/18), 243 So. 3d 1269.

When an appeal is filed within the time delay for filing an application for supervisory writs, and where the interests of justice and judicial economy would be better served, an appellate court may convert an unauthorized appeal to a supervisory writ. *State v. Jackson*, 22-34 (La. App. 1 Cir. 9/16/22), 353 So.3d 732, 735; *State v. Houston*, 19-615 (La. App. 1 Cir. 11/15/19), 291 So.3d 223, 225; *State v. Lyons*, 13-180 (La. App. 5 Cir. 10/9/13), 128 So.3d 407. In the present case, the State filed its motion for appeal within the time delays for filing an application for supervisory writs, in accordance with Uniform Rules-Courts of Appeal, Rule 4-3. Based on the timely filing and in the interest of justice and judicial economy, we convert the State's appeal to a writ application and address the issues presented pursuant to our supervisory jurisdiction.

*Admission of Evidence*

The State filed a memorandum in opposition to defendant's motion to quash and attached several exhibits thereto. However, the transcripts reflect that no exhibits were introduced and admitted into evidence at either of the motion to quash hearings. Based on the discussion at both hearings, it appears that the trial court, nevertheless, relied on the State's attached exhibits when ruling on the motion to quash.

On February 14, 2023, approximately one month after the trial court granted defendant's motion to quash, the parties appeared before the court in defendant's misdemeanor case number 26-6773. The prosecutor stated that she wanted to go on the record in the felony case 21-6772, which is the case at issue in this appeal, though it was not on the docket that day due to the granting of defendant's motion to quash. She stated, "…in the felony record of 21-6772 I would like to formally offer, file, and introduce the exhibits that were attached to the opposition motion that was filed by the State on 11/28 of 2022." Defense counsel indicated he had no objection, and the trial court admitted the exhibits into evidence.

Exhibits and attachments not properly and officially offered and admitted into evidence cannot be considered, even if they are physically filed into the trial court record. *State v. Whitley*, 14-737 (La. App. 5 Cir. 3/25/15), 169 So.3d 658, n.1. Therefore, the trial court erred by considering the exhibits attached to the State's memorandum when it ruled on defendant's motion to quash on January 19, 2023.

This Court has previously remanded cases and re-opened motion hearings to allow the admission of evidence. In *State v. Whitley*, 169 So.3d at 658, the trial court granted the defendant's motion to quash wherein the defendant alleged that the State failed to timely institute prosecution. At a hearing on the motion, the court did not hear testimony or receive evidence. This Court concluded that the

record was not complete, vacated the judgment of the trial court, and remanded the matter for a reopening of the motion to quash hearing. In *State v. Young*, 99-880 (La. App. 5 Cir. 1/12/00), 751 So.2d 364, 365, this Court conditionally affirmed the defendant's conviction and remanded for a reopening of a suppression hearing, because the record failed to include the search warrant. *See also State v. Perez*, 02-587 (La. App. 5 Cir. 11/26/02), 831 So.2d 542, *writ denied*, 03-221 (La. 5/2/03), 842 So.2d 1100; *State v. Turner*, 21-186 (La. App. 5 Cir. 6/23/21), 2021 WL 2582503 (unpublished opinion); and *State v. Schexnayder*, 14-479 (La. App. 5 Cir. 12/30/14), 167 So.3d 832, 836.

In the present case, because the exhibits were not admitted into evidence at the motion hearings, or before the trial court ruled, granting defendant's motion to quash, this Court could remand this matter for reopening of the hearing on defendant's motion to quash to allow the evidence to be admitted, in accordance with our prior decisions. However, such an exercise would be futile and inefficient where the trial court admitted the State's exhibits into evidence on February 14, 2023, and the State filed its motion for appeal the next day, February 15, 2023. Accordingly, while we do not condone the State's initial failure to introduce the evidence it relied upon, because the State's exhibits were ultimately admitted by the trial court, we will, in this instance, consider them in our review of defendant's motion to quash.

*Analysis of Cleansing Periods*

A motion to quash is the proper vehicle to attack a predicate DWI conviction on the basis that it falls outside of the cleansing period. *State v. Collins*, 19-231 (La. App. 5 Cir. 6/19/19), 275 So. 3d 401, 403. This Court applies an abuse of discretion standard when reviewing a trial court's determination on a motion to quash. *State v. Brooks*, 16-345 (La. App. 5 Cir. 12/28/16), 210 So.3d 514, 518. The granting of a defendant's motion to quash is a discretionary ruling by the

trial court, and absent abuse, the ruling should not be disturbed by the appellate court. *Id*. at 518-519. However, the trial court's legal findings on a motion to quash are subject to a *de novo* review. *State v. Hamdan*, 12-1986 (La. 3/19/13), 112 So.3d 812, 816.

In its sole assignment of error, the State argues that the trial court erred in granting defendant's motion to quash, because defendant's 2003 and 2004 predicate convictions fall within the ten-year cleansing period set forth in La. R.S. 14:98(C)(3). It contends that the trial court incorrectly calculated the ten-year cleansing period by failing to consider the plain language of La. R.S. 14:98(C)(3), which provides that any period of time during which a defendant is under an order of attachment for a DWI must be excluded from the running of the cleansing period. Alternatively, the State asserts that these attachment orders extended defendant's probationary periods, which are excluded when calculating the ten-year cleansing period.

Defendant responds that the trial court did not err in granting the motion to quash. He argues that this Court should reject the State's interpretation of the language of La. R.S. 14:98(C)(3), because it is improper to interpret the language "attachment for failing to appear…for an offense" in La. R.S. 14:98(C)(3) to encompass attachments issued for failing to abide by a punishment for an offense. Defendant further responds that the post-conviction attachments in the 2003 case were for failure to pay fines and penalties and, therefore, cannot be used to interrupt the cleansing period under La. R.S. 14:98(C)(3).

Additionally, defendant asserts that the State's evidence does not prove that either sentencing court extended his probation for either of the predicate convictions. Further, he contends that while a court may extend an offender's probation period after a hearing pursuant to La. C.Cr.P. art. 900, the extension of the probation period may not exceed the maximum period of two years for a

misdemeanor offense. Therefore, he asserts that the period of probation for each of the predicate misdemeanor convictions ended two years after the original sentence and could not extend the cleansing period to meet the June 21, 2021 date of the instant alleged offense.

Before we can determine if defendant's prior convictions fell within the ten-year cleansing period, a review of the applicable law is in order. First, we must consider the language of La. R.S. 14:98(C)(3) to determine what time periods must be excluded from the ten-year period.

The version of La. R.S. 14:98(C)(3) that was in effect at the time of the instant offense provides in pertinent part:

> For purposes of this Section, a prior conviction shall not include a conviction for an offense under this Section…if committed more than ten years prior to the commission of the crime for which the defendant is being tried… ***However, periods of time during which the offender was awaiting trial, under an order of attachment for failure to appear, or on probation or parole for an offense described in this Paragraph, or periods of time during which an offender was incarcerated in a penal institution in this or any other state for any offense, including an offense described in Paragraph (1) of this Subsection, shall be excluded in computing the ten-year period***.

(Emphasis added).

The State argues that in calculating the ten-year cleansing period, La. R.S. 14:98(C)(3) requires the exclusion of the time periods during which a defendant is under an order of attachment for failure to appear, regardless of whether the attachment was issued before or after the date of conviction. Defendant reads the phrase "under an order of attachment for failure to appear" in conjunction with "for an offense described in this Paragraph." He construes this to mean that "attachments later issued because a defendant disobeys punishment orders" are not to be excluded.

The interpretation of any statutory provision starts with the language of the statute itself. *State v. Oliphant*, 12-1176 (La. 3/19/13), 113 So.3d 165, 168; *Oubre*

*v. Louisiana Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4; *Oliphant*, 113 So.3d at 1154.

Here, the language of La. R.S.14:98(C)(3) does not suggest that "under an order of attachment for failure to appear" applies only to attachments issued prior to an offender's conviction, because the statute additionally explicitly excludes the "time during which the offender was awaiting trial" in computing the ten-year period. Because the language at issue, "under an order of attachment for failure to appear," is not qualified by any timing specifications, the time defendant spent under an order of attachment for failure to appear, whether issued pre or post-conviction, must be excluded from the ten-year cleansing period.

The prior convictions used by the State in a repeat DWI offender prosecution under La. R.S. 14:98 are essential matters of proof at trial, *i.e.* a necessary element to the State bearing its burden of proving the defendant is a repeat offender. *Collins*, 275 So. 3d at 403. The State has the burden of negating the cleansing period. *Id.*

2003 Predicate Conviction

To meet its burden of negating the ten-year cleansing period, the State provided documents pertaining to defendant's 2003 conviction, including the bill of information, waiver of constitutional rights/guilty plea form, commitment, and minute entries. These documents indicate that defendant's first DWI offense occurred on March 27, 2001; he pled guilty on June 11, 2003; and he was sentenced to 60 days in the parish prison, suspended, and placed on active probation for six months on June 11, 2003. The minute entries further reflect that the conditions of defendant's probation included: driver school, substance abuse

evaluation, community service, installation of an ignition interlock system, as well as a fine and court costs.

Based on that cases' minute entries, the following is a timeline of the events related to the attachments issued and recalled in the 2003 predicate conviction.

- **September 10, 2003:** It is ordered by the Court that an instanter attachment be issued herein, for failure to appear for installment date.

- **October 27, 2003:** It is ordered by the Court that attachment be recalled. Installment payments extended to 11/26/2003. COURT Fee/Fine Assessed to Date: $833.50 Balance Due: $833.50: payment date 10/27/2003-today's payment is$250.00 New Balance After Payment Applied: $583.50.

- **December 1, 2003:** It is ordered by the Court that an Instanter attachment be issued herein, for failure to appear for installment date.

- **May 7, 2007:** It is ordered by the Court that attachment be recalled. Installment payments extended to 06/06/2007. COURT Fee/Fine Assessed to Date: $843.00 TCMS: $50.00 Balance Due: $593.00: payment date 05/07/2007-today's payment is $0.00 New Balance after Payment Applied $593.00."

- **June 7, 2007:** It is ordered by the Court that an Instanter attachment be issued herein, for failure to appear for installment date.

- **August 30, 2013**: It is ordered by the Court that an Instanter attachment be issued herein, for failure to appear for installment date.

- **June 4, 2015:** Contempt for Missed Installment Payment.

- **March 16, 2016:** Clerk Counter Program- Fine and cost paid in full. It is ordered by the Court that attachment be recalled. Contempt paid in full.

- **March 17, 2016:** Fine and court cost paid in full this date. Finished record.

The minute entries indicate that all of the attachments issued were for failure to appear for "installment dates," which involve the payment of fines or fees. This Court has clearly stated that "the purpose of cleansing periods such as the one provided in section (F)(2) of R.S. 14:98 is to reward prior offenders with the 'cleansing' of their prior convictions if they are able to refrain from committing another offense within the statutory time frame."[2] *State v. Hoerner*, 11-659 (La.

---

[2] The provisions of La. R.S. 14:98(F)(2) are now contained in La. R.S. 14:98(C)(3).

App. 5 Cir. 2/28/12), 88 So.3d 1128, 1131. The inclusion of such attachments would punish prior offenders by preventing the "cleansing" of their prior convictions if they are unable to pay their monetary obligations within the statutory timeframe. As such, it appears the exclusion of the time period for attachments issued for failure to fulfill monetary obligations was never intended under La. R.S. 14:98(C)(3).

Nevertheless, even if attachments for failure to appear to pay fines and fees are properly excluded from the cleansing period, the State did not introduce any evidence to show defendant was provided with the appropriate notice to appear on those "installment dates." While the relevant minute entries refer to "installment dates," there is no evidence in this record of the amount defendant was required to pay on those dates; exactly what the term "installment date" means or requires; where defendant was to pay the "installment;" or what the consequences of failing to appear and pay the money would be.

In addition to the minute entries for the 2003 case, the State introduced the commitment signed by the trial court and dated June 11, 2003. Although the minute entry indicates that a $400 fine was assessed, the commitment sets forth the sentence and various conditions but does not indicate that a fine was assessed. Rather, the commitment provides, "A fine of $____, suspend $0.00 plus court costs."

The brief minute entries indicating attachments were issued in the 2003 case, without more, are insufficient to prove that the time periods during which defendant was under orders of attachment, as indicated on the minutes, must be excluded from the cleansing period. Therefore, the time period excluded from the cleansing period for this conviction ran from the date of the offense, March 27, 2001, until defendant's probation expired by operation of law on December 11, 2003.

<u>2004 Predicate Conviction</u>

In connection with the 2004 predicate conviction, the State introduced copies of the bill of information, minute entries, a conditions of probation form, and the transcript from the guilty plea hearing held on June 24, 2004. These documents reflect that defendant's second DWI offense occurred on December 7, 2003; he pled guilty on June 24, 2004; and he was sentenced to six months imprisonment, suspended, and placed on active probation for two years on June 24, 2004.

The minute entries provide the following timeline of the events as it relates to attachments issued and recalled in the 2004 predicate conviction.

- **February 9, 2005:** Rule for Contempt set 3-3-05.

- **March 3, 2005:** Contempt rule satisfied. Fine deferred until 7/1/05. Ordered to perform a minimum of 20 hours of community service per month commencing 7/05.

- **August 11, 2005**: Attachment issued, failure to pay fine and costs. Bond set at $500.00 cash.

- **November 21, 2005:** Contempt/revocation hearing set 1-5-06.

- **January 5, 2006:** Attachment issued, failure to comply with conditions of probation. Bond set at $2,500.00 cash.

- **June 19, 2006:** $660.00 of fine paid

- **July 18, 2018:** Motion to Recall Attachment and to Terminate Probation filed by attorney Wendy Williams is set 9/4/2018 at 9:00 a.m.

- **October 5, 2018:** Accused present in court with counsel, Wendy Williams. Motion to Recall Attachment and to Terminate Probation hearing held: Argument by Ms. Williams. Motion granted. Attachment recalled. Probation terminated. Case closed.

In computing the ten-year cleansing period, the State relies upon the following periods of time in the 2004 predicate conviction when defendant was under an order of attachment: 1) the time from August 11, 2005 until October 5, 2018; or 2) the time from January 5, 2006 until October 5, 2018. Excluding either of these time periods, the State asserts, causes the ten-year cleansing period not to

have lapsed, and defendant's predicate convictions to be properly used to enhance the instant offense.

The August 11, 2005 minute entry provides, "Attachment issued, failure to pay fine and costs. Bond set at $500.00 cash." The November 21, 2005 minute entry provides that a "contempt/revocation hearing" was set for January 5, 2006, and the January 5, 2006 minute entry provides, "Attachment issued, failure to comply with conditions of probation. Bond set at $2,500.00 cash."

The August 11, 2005 minute entry does not contain enough information to conclude that a hearing was set for August 11, 2005, that defendant was notified to appear, or that the attachment was issued because defendant failed to appear on that date. Rather, it only provides that an attachment was issued because of defendant's "failure to pay fine and costs." The January 5, 2006 minute entry reflects that an attachment was issued for "failure to comply with conditions of probation." However, it does not indicate the condition of probation that was allegedly violated. The conditions of probation form in evidence indicated that there were several conditions of probation, including payment of fines and fees.

At the December 13, 2022 hearing on the motion to quash, the trial court stated that the evidence provided was minimal, pointing out that the only evidence before it was "one little minute entry [that] says rule for contempt/revocation hearing," which was handwritten and did not indicate the particular basis for the rule. The court stated that it would like to see the "rule for contempt/revoke" on which the minute entry was based in order to determine whether the rule to revoke was based on failure to pay fees. The trial court requested the State to provide this additional information and continued the matter for that purpose. At the follow-up hearing on January 19, 2022, the trial court asked if there was any additional information regarding the attachments arising from defendant's prior convictions, other than the "little blurbs" that were provided in the minutes. The State and

defense counsel replied that they did not have any additional information. Thereafter, the trial court granted the motion to quash.

There were seventeen years between defendant's 2004 conviction and the 2021 offense at issue in this case. In order to show the cleansing period did not elapse prior to the current offense, the State had the burden of proving the time periods that were to be excluded from the cleansing period. However, the minute entries, which were ultimately considered by the trial court, reflect that the attachments were issued for failure to meet monetary obligations and not necessarily for failure to appear. Although one entry indicated that the attachment was issued for failure to comply with conditions of probation, there is no evidence to show what condition was allegedly violated. Payment of fees was included in the probation conditions, and it may or may not have been the grounds for the issuance of the attachment. Further, the State failed to provide any evidence to show defendant received notice of the hearing dates or that the attachments were properly issued and valid.

Our review of the record reveals that the State failed to prove that these attachments triggered a period of time that should be excluded from the cleansing period under La. R.S. 14:98(C)(3). Accordingly, we find that these periods of time should not be excluded in computing the ten-year cleansing period.

As an alternative method for computing the ten-year cleansing period, the State contends that because of these attachments, defendant was still on probation in the 2004 case until it was terminated on October 5, 2018. As such, the State avers that the cleansing period had not yet elapsed as to the prior offenses by the time defendant committed the instant crime on June 6, 2021.

Considering our finding that the State did not prove the attachments were properly issued, with notice to defendant to appear, we also find that these attachments did not extend the probation period.

When considering the motion to quash the predicate convictions, the trial court pointed out that a rule to revoke was not filed in the 2004 case and that there was a "scant bit of information" available. In the 2004 case, defendant was sentenced to two years of active probation. Therefore, his probation was set to conclude in 2006. Although the court acknowledged that a minute entry showed defendant's probation terminated years later in 2018, the court agreed with defense counsel that defendant's probation terminated by operation of law prior to that time. The court reasoned that because a rule to revoke was not filed, defendant could not have been on misdemeanor probation for such length of time.

La. C.Cr.P. art. 898 provides that "[u]pon completion of the period of suspension of sentence or probation, ... the defendant shall have satisfied the sentence imposed." However, probation may be revoked for failure to satisfy the probation conditions. *See* La. C.Cr.P. art. 900(A)(5). Contrary to the State's argument, the issuance of the attachments would not have *automatically* extended the probationary period in his predicate convictions. At that time, a revocation or extension of probation could have been sought on the basis of defendant's failure to pay a fine, but the trial court was required to consider the reasons for the failure to pay. *See Bearden v. Georgia*, 416 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *State v. Castille*, 623 So.2d (La. App. 5th Cir. 1993); *State v. Chelette*, 558 So.2d 770 (La. App. 5th Cir. 1990). The evidence in this record does not show that the procedures outlined in La. C.Cr.P. arts. 899 and 900 for extending a probationary period were followed in either of the underlying 2003 and 2004 cases upon which defendant's current charge was predicated.

La. C.Cr.P. art. 894.4 currently provides: "[p]robation shall neither be revoked nor extended based solely upon the defendant's inability to pay fines, fees, or restitution to the victim." However, effective August 15, 2006, after defendant's sentencing in his predicate convictions, La. C.Cr.P. art. 894.4 stated

when a defendant "has been sentenced to probation or is on parole and has a monetary obligation, including but not limited to court costs, fines, costs of prosecution, and any other monetary costs associated with probation or parole, the judge *may extend* the period of probation or parole until the monetary obligation is extinguished." (Emphasis added.) *See* 2006 La. Acts No. 823, § 1. In the instant case, however, the evidence presented by the State does not demonstrate that any action was taken that would have extended the probationary period in defendant's predicates.

At the time of the predicate offenses, La. C.Cr.P. art. 899(A) provided that during the probationary period, the court may issue a warrant for the arrest of a defendant "for violation of any of the conditions of probation" or may issue a summons to appear "to answer to a charge or violation or threatened violation" of those conditions. In addition, La. C.Cr.P. art. 899(B) provides that a probation officer may issue a written or oral detainer authorizing the arrest of a probationer if the officer has "reasonable cause to believe" that a violation has occurred or is imminent, or in case of emergency. *See State v. Black*, 97-774 (La. 12/12/97), 706 So.2d 423, 424.

Specifically, La. C.Cr.P. art. 899(D) provided for three events upon which the running of the period of probation shall cease: the time of the issuance of the probationary warrant, summons, or detainer.[3] The Louisiana Supreme Court has interpreted La. C.Cr.P. art. 899(D) to mean that the issuance of a detainer suspends the running of the probationary term pending a final violation hearing. *See Black*, 706 So.2d at 425.

---

[3] La. C.Cr.P. art. 899(D) stated, in part:

> When a warrant for defendant's arrest or a summons for defendant's appearance issued under Paragraph A or a detainer is issued under Paragraph B of this Article, the running of the period of probation shall cease as to the time the warrant, summons, or detainer is issued.

Here, defendant was sentenced on June 24, 2004, to six months imprisonment, suspended, and placed on active probation for two years that same day. As such, defendant's probationary period was set to end on June 24, 2006. Based solely on the minute entries, an action under La. C.Cr.P. arts. 899(A) or (B) *may* have been taken for probation violations because of the "contempt/revocation hearing" set for January 5, 2006. This action would have occurred prior to the completion of defendant's probationary period on June 24, 2006. However, on January 5, 2006, the court issued an attachment for "failure to comply with conditions of probation." The January 5, 2006 minute entry says nothing about that court either extending or revoking defendant's probation, nor, as discussed above, does it state what conditions of probation defendant failed to comply with— whether monetary or otherwise. Even though the trial judge here asked for more information regarding this specific issue at one of the motion to quash hearings, the State did not present any further information. As such, no further details are provided beyond the minute entries.

The State's evidence did not definitively prove any action was taken, such as the filing of a rule to revoke or the issuance of a warrant, summons, or detainer issued by the trial court under La. C.Cr.P. art. 899, which suspended or extended defendant's probationary period. Furthermore, the State's evidence does not show that defendant was served with notice of the "contempt/revocation hearing" set for January 5, 2006. Accordingly, because the State failed to prove that defendant's probationary period terminated at a later date, we decline to exclude either alleged period of time presented by the State in computing the ten-year period under La. R.S. 14:98(C)(3).

Similarly, as to the 2003 predicate conviction, any argument that the numerous attachments, which were issued and recalled on several occasions until March 16, 2016, extended defendant's probationary period would fail. As

recounted above, in connection with this prior offense, defendant was sentenced on June 11, 2003, to sixty days in the parish prison, suspended, and placed on active probation for six months. Thus, it would seem that defendant's probationary period was set to end on December 11, 2003. The minute entries provide that the trial court issued and recalled several attachments for defendant's "failure to appear for installment date," which can be surmised to pertain to his court costs and fines. Several of the attachments were issued and recalled well beyond the date that defendant's probation was set to end in this case. Based on the evidence presented by the State, under La. C.Cr.P. art. 899(A) or (B), the State did not prove that the attachments issued by the court suspended the running of the probationary term pending a final violation hearing. The minute entries do not reflect any actions were taken which would extend defendant's probationary period. *See* La. C.Cr.P. art. 899(D).

Accordingly, in relying upon the foregoing methods for computing the ten-year cleansing period, we find that the State has not met its burden of negating the cleansing period contained in La. R.S. 14:98(C)(3) as to defendant's two predicate convictions.

**DECREE**

For the foregoing reasons, we convert this appeal to a writ application and review this matter under our supervisory jurisdiction. Based on our review, we find that the trial court did not err in granting defendant's motion to quash his two predicate convictions, because the State did not meet its burden in negating the cleansing period. Accordingly, this writ application is denied.

**APPEAL CONVERTED TO WRIT;**
**WRIT DENIED**

STATE OF LOUISIANA                    NO. 23-KA-224

VERSUS                                FIFTH CIRCUIT

MARLON SAGASTUME                       COURT OF APPEAL

                                      STATE OF LOUISIANA


**SCHLEGEL, J., DISSENTS WITH REASONS**

I respectfully dissent from the majority opinion.

The record shows that there was an attachment issued on January 5, 2006 because defendant violated the conditions of his probation under the 2004 predicate offense in the 29th Judicial District Court: "[a]ttachment issued, failure to comply with conditions of probation." The majority, however, focuses on the fact that the minute entry does not "state what conditions of probation defendant failed to comply with—whether monetary or otherwise." The majority also focuses on the fact that the State failed to "definitely prove any action was taken, such as the filing of a rule to revoke or the issuance of a warrant, summons, or detainer issued by the trial court under La. C.Cr.P. art. 899" or show that defendant was served with notice of the "contempt/revocation hearing" set for January 5, 2006.

The pertinent records for the 2004 predicate show the following actions:

June 24, 2004: "Sentenced to 6 months parish prison, suspended. Placed on 2 years misdemeanor probation supervised through the DA's office. Fined $750.00 and costs, payable at the rate of $100.00 per month commencing 7/04. Ordered to perform 240 hours of community service by 12/31/04. Ordered to attend and complete a driver's improvement program by 10/31/04. Ordered to attend and complete a substance abuse program by 12/31/04. Ordered to install a ignition interlock device on his vehicle and not drive a vehicle that doesn't have one. Ordered not to consume alcoholic beverage during probationary period."

February 9, 2005: "Rule for Contempt set for 3-3-05."

23-KA-224                    1

March 3, 2005: "Contempt rule satisfied. Fine deferred until 7/1/05. Ordered to perform a minimum of 20 hours of community service per month commencing 7/05."

August 11, 2005: "Attachment issued, failure to pay fine and costs. Bond set at $500.00 cash."

November 21, 2005: "Contempt/revocation hearing set 1-5-06."

January 5, 2006: "Attachment issued, failure to comply with conditions of probation. Bond set at $2,500.00 cash."

June 19, 2006: "$660.00 of fine paid."

July 18, 2018: "Motion to Recall Attachment and to Terminate Probation filed by attorney Wendy Williams is set 9/4/2018 at 9:00 a.m."

October 5, 2018: "Accused present in court with counsel, Wendy Williams. Motion to Recall Attachment and to Terminate Probation hearing held: Argument by Ms. Williams. Motion granted. Attachment recalled. Probation terminated. Case closed."

I agree that the State did not provide any evidence that defendant received notice of any of the hearings in this case. But there is a distinction between issuing an attachment for failure to appear and an attachment issued for violating conditions of probation. And La. R.S. 14:98(C)(3) provides an additional and separate basis for periods of time during which a defendant is "on probation or parole for an offense described in this Paragraph."

On November 21, 2005, before the probation period expired, a "contempt/revocation hearing" was set for January 5, 2006. On January 5, 2006, within the two-year probation period, an attachment was issued by the Court for "failure to comply with conditions of probation." Notably, this attachment is worded differently than the previously-worded "failure to pay fine and costs" attachment that was issued on August 11, 2005. Furthermore, the hearing on January 5, 2006 included a "revocation hearing," not just a "Rule for Contempt," which had previously been set for March 3, 2005. As set forth above, defendant's conditions of probation included: payment of fines, 240 hours of community service, attend and complete a driver's improvement program, attend and complete

a substance abuse program, install an interlock device on his vehicle and not drive a vehicle without one, and not consume alcohol during the probationary period.

The majority appears to focus on the court costs, fines and fees issue and the failure to provide evidence of service. But respectfully, I do not believe we can ignore the evidence that has been provided. Although the evidence does not note which conditions of probation were violated, the minute entry from January 5, 2006 clearly indicates that the attachment was issued because the defendant had violated his conditions of probation: "attachment issued, failure to comply with conditions of probation." And the minute entry from November 21, 2005 clearly indicates that a revocation hearing was set for January 5, 2006, at which time the Court issued an attachment and set a bond in the amount of $2,500.00. The record does not say that it was issued for failure to appear or that it had anything to do with court costs, fines and fees. In fact, a review of the minute entries shows that the Court understood the distinction. Only five months earlier on August 11, 2005, the Court issued an attachment for "failure to pay fine and costs" and set a bond in the amount of $500, which is a much lower amount.

In *State v. Lewis*, 18-600 (La. App. 3 Cir. 8/31/18), 254 So.3d 1219, the defendant pled guilty to misdemeanor charges on March 6, 2017 and was placed on probation for one year. The State filed a rule to revoke defendant on March 6, 2018, exactly one year later. On the same date, the district court signed the rule to show cause setting the matter and ordered that all parties be served. Two days later, the clerk of court issued a notice to the defendant. At the hearing, defense counsel moved to quash the rule arguing that neither an arrest warrant nor a summons had been issued to defendant during his probationary period. The district court denied the motion and held that the relevant date was the date it signed the order attached to the motion and order to revoke probation. Mr. Lewis argued that the issuance of the summons did not occur until the notice to

appear was served on him, not when it was issued. The Third Circuit disagreed and found that such a reading of the statute "conflates the issuance of the summons in the first paragraph of section (A) with the service of the summons to appear in the second paragraph of section (A)." *Id.* at 1221. The Third Circuit ultimately found that the issuance of the summons ceased the running of the period of probation and thus the summons was timely issued before the expiration of the defendant's probation. The Court further noted that under La. C.Cr.P. art 898, a defendant's sentence is not satisfied until his probation is complete.

The Louisiana Supreme Court's holding in *State v. Black*, 97-0774 (La. 12/12/97), 706 So.2d 423, is consistent with *State v Lewis.* The *Black* case involved interpretation of Paragraph B of La. C.Cr.P. art. 899. The Supreme Court addressed the issue of whether an affidavit was necessary for a rule to revoke probation under Article 899(B), which permits a probation officer to issue a written or oral detainer authorizing the arrest of a probationer if the officer has "reasonable cause to believe" that a violation has occurred, or is imminent, or in case of emergency. Analyzing paragraphs A and B of Article 899, the Supreme Court found that the statute did not contain a requirement for an affidavit under either paragraph. The Court concluded: "[T]he detainer issued by the relator's probation officer before relator's release from state supervision suspended the running of the probationary term pending a final violation hearing even though it was not supported by an affidavit. La. C.Cr.P. art. 899(D)." *Id.* at 425. The Supreme Court reasoned:

> However, "[a] probationer has a different status. He has already been convicted of a crime, has had a sentence of imprisonment imposed and remains free not by right but solely by the exercise of the trial judge's discretion...." (Citation omitted.) In fact, jurisprudence has long established that **while probationers facing revocation retain some constitutional and statutory rights, those rights do not in every instance match those enjoyed by non-criminals facing trial**.

*Id.* at 424. (Emphasis added.)

If the Louisiana Supreme Court found that it was enough for a probation officer to simply issue a written or oral detainer that authorized the arrest of a probationer to suspend the running of probation when the officer had "reasonable cause to believe" that a violation had occurred, certainly the issuance of an attachment by a judge for "failure to comply with conditions of probation" is sufficient to suspend the running of probation.

Additionally, the record shows that on June 19, 2006, defendant paid $660 of his fines; 6 months after the attachment was issued for "failure to comply with conditions of probation." But the attachment was not recalled and his probation was not terminated until July 18, 2018, after defendant's attorney filed a motion to recall attachment and terminate probation.

Accordingly, defendant was under legal restraint from December 7, 2003 to October 5, 2018 for the 2004 predicate offense.[4] This period must be excluded from computing the ten-year cleansing period.

Therefore, I would find that the State has borne its burden of negating the cleansing period for the two predicates. I agree with converting the appeal to a writ application, but would grant the writ.

---

[4]  I agree that defendant's probation for the 2003 predicate offense expired by operation of law on December 11, 2003, as found by the majority.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-224

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLANT)      THOMAS J. BUTLER (APPELLANT)      JOHN A. VENEZIA (APPELLEE)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053